**In re BICOASTAL CORPORATION, d/b/a Simuflite, f/k/a the Singer Company, Debtor.**

**Bankruptcy No. 89–8191–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 8, 1992.

Harley E. Riedel, Tampa, Fla., Donald E. Engle, St. Paul, Minn., Robert H. Wheeler, Chicago, Ill., for debtor.

Mark J. Wolfson, Tampa, Fla., Nancy J. Casale, Peter C. Califano, San Francisco, Cal., for William Mathews Agency, Inc.

William Goldman, Brown & Wood, North Miami Beach, Fla., for Creditors' Committee.

## ORDER ON MOTION AND SUPPLEMENTAL MOTION FOR ORDER PERMITTING FILING OF CLAIM AFTER BAR DATE

ALEXANDER L. PASKAY, Chief Judge.

THE MATTERS under consideration in this Chapter 11 case are a Motion and Supplemental Motion for Order Permitting Filing of Claim After Bar Date filed by William Mathews Agency, Inc. (Mathews). In its Motions, Mathews contends that it is entitled to the entry of an Order permitting it to file a late claim nearly two years after the expiration of the bar date.

It is the contention of Mathews that (1) it was a known creditor, and as such, it was entitled to receive actual notice of the bar date; (2) the publication of the notice of the bar date was not only in violation of the Order of this Court, which permitted notice by publication for unknown creditors, but was insufficient because it was published in the wrong place; (3) the notice was published for only one day, which would not be sufficient as a matter of law; and

(4) in any event, its neglect to file a timely claim was excusable.

Bicoastal Corporation d/b/a Simuflite, f/k/a The Singer Company (Debtor), contends that Mathews was not a known creditor; that the record only supports the proposition that its possible claim was at most speculative; that no liability of Mathews was ever established nor were any damages ever assessed against Mathews in any court of competent jurisdiction by any entity. Debtor further contends that because Mathews was an unknown creditor whose claim was not reasonably ascertainable, it was not entitled to be given notice of the bar date; that the publication of the notice of bar date was proper and not in violation of the Order; that publishing notice only one day was sufficient as a matter of law; and lastly, that the failure of Mathews to file its claim earlier was not due to excusable neglect.

The facts that are without dispute and relevant to the issues under consideration as they appear from the record can be summarized as follows:

The Singer Company (Singer), now known as the Debtor, was the owner of an office building located at 2450 Washington Avenue, San Leandro, California (Mathews Property), which it acquired sometime in the early 1960's. Singer also owned an electric calculator factory on an adjacent property, which is generally referred to as the Singer–Friden site. Singer operated various facilities on the Singer–Friden site up to and including 1976. Mathews acquired the Mathews Property from Singer in April of 1978, and has maintained the office building on the property since that time.

It appears that on December 12, 1988, the California Department of Health Services (DHS) contacted the Debtor by letter and inquired about the well and ground water conditions of the Singer–Friden site, indicating that the ground might be contaminated with hazardous substances. The communication of the DHS intimated that the Debtor may have been responsible for the alleged contamination. On January 5, 1989, the Debtor responded to the inquiry,

informing the DHS that it had no information available regarding the alleged contamination, and therefore, it was unable to furnish any factual data concerning the same. On November 10, 1989, the Debtor filed its Petition for Relief under the Bankruptcy Code.

On November 30, 1989, this Court entered an Order establishing December 30, 1989, as the bar date by which creditors were required to file proofs of claims against the Debtor. The Order further provided that in accordance with Bankruptcy Rule 2002(a)(8), (i), and (k), the Debtor shall provide at least twenty days notice of this Order by first-class regular mail to "all entities which have filed a proof of claim or interest or which have been listed in the Schedules, as supplemented or amended, filed herein as holding a claim or who are otherwise known to the Debtor...." Further, the Order provided that the Debtor shall "cause a copy of the Notice to be published on one occasion at least twenty days prior to the bar date in each of the following publications: national editions of the *Wall Street Journal* and the *New York Times,* together with local newspapers in cities where the Debtor has maintained a business location...." Thereafter, this Court entered an Order extending the bar date to January 31, 1990.

Mathews contends that it was not until March 30, 1990, that it first learned that the Singer–Friden property was contaminated and that the contamination had likely migrated onto the Mathews property. Thereafter, between May of 1990 and April 29, 1991, it communicated with DHS representatives regarding the alleged contamination. Sometime after April 29, 1991, DHS notified Mathews by letter that the property was indeed contaminated, and that Mathews was a "potentially responsible party." Despite Mathews' objections, on May 21, 1991, DHS issued an "Imminent and Substantial Endangerment Determination and Remedial Action Order" that formally designated the Singer–Friden property and the Mathews property as hazardous sites, and named Mathews as a potentially responsible party.

In June of 1991, Mathews learned of the Debtor's bankruptcy case from DHS representatives. Mathews contends that upon its learning of the bankruptcy until its filing the Motion under consideration in December of 1991, it acted with "all reasonable diligence" as to claims against other parties, investigating the status of the bankruptcy case, and obtaining relevant information about the date for filing a claim, as well as options to file a claim after the bar date. It should be noted that the claim of the State of California based on the same alleged pollution has already been disallowed by this Court.

These are the essential facts, based on which this Court is called upon to consider whether or not Mathews is entitled to file a late claim. On its face, the claim under consideration leaves no doubt that it regards only *potential* liability that may or may not be visited on Mathews sometime in the future based solely on its current ownership of the subject property. Of course, it is possible that this liability will never be imposed on Mathews. Any claim Mathews may have against the Debtor depends on the success of DHS against Mathews in the administrative action for clean-up of the subject properties. Thus, the claim is clearly contingent.

Section 502(c) of the Bankruptcy Code provides that contingent or unliquidated claims must be estimated if the fixing or liquidation of the claim would unduly delay the administration of the case. Thus, this claim must either be liquidated, which no doubt would be a very time-consuming, extensive and expensive process, or at least estimated before it could be allowed.

■ It is well-settled in bankruptcy law that the debtor's estate should not be burdened by estimated claims contingent in nature. The Debtor should be "expeditiously rehabilitated and reorganized" to enable it a fresh start, while at the same time "according fair treatment to creditors by paying ascertainable claims as quickly as possible." *In re The Charter Co.,* 862 F.2d 1500, 1502 (11th Cir.1989) (citing *NLRB v. Bildisco and Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984)).

Moreover, it is obvious that the claim is one for reimbursement or contribution by the Debtor, the alleged "polluter." Section 502(e) of the Bankruptcy Code expressly deals with the subject of contingent claims for contribution and reimbursement, and provides in pertinent part:

(1) [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—

(A) such creditor's claim against the estate is disallowed; [or]

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution....

Thus, a claim will be disallowed under § 502(e)(1)(B) if (1) the claim is for reimbursement or contribution; (2) the party asserting the claim is liable with the debtor on the claim of a creditor; and (3) the creditor's claim has been disallowed or the claim is contingent at the time of allowance or disallowance. *See Charter, supra,* (disallowing contingent claims for reimbursement or contribution for costs incurred in clean-up of hazardous waste); *In re Dant & Russell, Inc.,* 951 F.2d 246, 248 (9th Cir.1991); *In re Provincetown–Boston Airlines, Inc.,* 72 B.R. 307, 309 (Bankr. M.D.Fla.1987). Based on § 502(e), even if this Court permitted the claim to be filed late, it would be disallowed as a matter of law because the State of California's claim against the Debtor has been disallowed.

In addition, it is without dispute that before this claim could be allowed, it would have to be liquidated or estimated, a process which would certainly be detrimental and prejudicial to all constituents who have timely filed their claims, and whose claims have been allowed. *See, e.g., In re Chateaugay Corp.,* 104 B.R. 617, 621 (Bankr.S.D.N.Y.1989) (more vigilant creditors should not be penalized by creditor who did not timely file proof of claim; aggregate of late proofs of claims could have devastating effect on entire organization).

This Chapter 11 case has been pending for nearly three years. After extensive litigation with the Government, it now appears that almost all of the Debtor's major problems have been resolved, and the Debtor will be able to propose, possibly by the end of this month, a consensual Plan of Reorganization. With the cooperation of the Official Creditors' Committee, the Debtor may shortly be able to obtain confirmation of its Plan. To entertain this claim at such a late stage of the game would certainly not only present a very substantial and detrimental delay to the creditors who timely filed their claims, but it would also possibly destroy the Debtor's ability to successfully attain a meaningful reorganization.

In addition, this Court is equally satisfied that Mathews was less than diligent in advancing its claim. Mathews learned of the Debtor's bankruptcy case in June of 1991, yet it did not file the Motion under consideration until the following December. Mathews clearly did not require six months to file the Motion. It could have easily ascertained the pendency of the Debtor's bankruptcy case, as well as the bar date on which to file a Proof of Claim, either via telephone or letter shortly after learning of the bankruptcy. *See In re Sasson Jeans, Inc.,* 96 B.R. 457 (Bankr.S.D.N.Y.1989); *In re Starkey,* 1 CBC 138, 142 (W.D.Wis.1973) (extension will not be granted where delay could have been prevented by diligence).

Based on the reasons stated, including the last comments regarding Mathews' lack of due diligence, and the totality of the circumstances, this Court is satisfied that the Motions are not well taken, and as such, should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion and Supplemental Motion for Order for Permitting Filing of Claim After Bar Date be, and the same are hereby, denied.

DONE AND ORDERED.