**In re COTTONWOOD CANYON LAND CO., Kaiser Steel Corporation, Kaiser Steel Tubing, Inc., KT Realty Incorporated, Myers Drum Company, Lake Tamarisk Development Corporation, Union Steel Company, Reorganized Debtors.**

**Bankruptcy Nos. 87 B 1552 E, 87 B 1553 E, 87 B 1705 E, 87 B 1707 E to 87 B 1710 E and 87 B 1552 E.**

United States Bankruptcy Court, D. Colorado.

Oct. 29, 1992.

Craig A. Christensen, Harold G. Morris, Lindquist, Vennum & Christensen, Denver, Colo., for Kaiser Steel Resources, Inc.

Randolph C. Visser, Roseann C. Stevenson, David E. Woodruff, Morgan, Lewis & Bockius, Los Angeles, Cal., and Edwin G. Perlmutter, M. Frances Cetrulo, Berenbaum & Weinshienk, P.C., Denver, Colo., for California Steel Industries, Inc.

OPINION AND ORDER ON THE OBJECTION TO AMENDED CLAIM OF CALIFORNIA STEEL INDUSTRIES, INC.

CHARLES E. MATHESON, Chief Judge.

Kaiser Steel Resources, Inc. ("Resources"), the Reorganized Debtor in this Chapter 11 proceeding, has filed an objection to the proof of claim filed in this case by California Steel Industries, Inc. ("CSI"). The Court, by this Opinion and Order, hereby grants the objection of Resources and disallows the claim of CSI to the extent hereinafter specified.

Kaiser Steel Corporation ("Kaiser") for many years operated a steel production and processing facility in California. Pursuant to an agreement dated July 13, 1984, Kaiser sold a 378 acre parcel, which comprised only a portion of the land owned by Kaiser, to CSI for approximately $110,000,000.

Pursuant to the sale contract, the property was sold to CSI "as-is, where-is" and without warranty of any kind. However, the parties in the contract expressly agreed to cross indemnification provisions as follows:

11.2 *Subsurface Zone.*

(a) Seller shall be responsible for such contamination of the groundwater or the subsurface zone as may exist on the date hereof with respect to the Land resulting from the operation of Seller's Fontana steel works by Seller (or its predecessors in interest) prior to or after the date hereof and for the movement of any such contamination which results from natural causes such as rainfall or earthquake. Seller shall indemnify, defend and hold Buyer harmless from and against all expense (including, without limitation, reasonable attorneys' fees and disbursements), loss or liability suffered by Buyer by reason of governmental action or third party claims arising out of such contamination or movement, excluding, however, any such expense, loss or liability for which Buyer is responsible under Section 11.2(b) and loss of profits or other consequential damages.

(b) Buyer shall be responsible for any exacerbation or movement of contamination of the groundwater or the subsurface zone as may exist on the date hereof with respect to the Land resulting from Buyer's use of the Land and for any additional contamination or release of contaminants with respect to the Land occurring on or after the date thereof. Buyer shall indemnify, defend and hold Seller harmless from and against all expense (including, without limitation, reasonable attorneys' fees and disbursements), loss or liability suffered by Seller by reason of governmental action or third party claims arising out of such exacerbation, movement or additional contamination, excluding, however, loss of profits or other consequential damages.

CSI has now filed an amended proof of claim in this proceeding in the amount of approximately $55,000,000. Of that amount, CSI asserts it has already spent approximately $250,000 in dealing with potential environmental problems on the property. It also asserts that it anticipates that it will spend approximately $54,000,000 in further cleanup of the environmental problems that exist at the site. CSI seeks an affirmative injunction compelling Re-

sources to clean up the CSI property. In the alternative, CSI seeks recovery of its incurred and anticipated future costs and expenses for investigation and remediation of the contamination caused by Kaiser and Resources at the CSI property. CSI premises its claim on the following general theories:

1. CSI claims the right to payment under 42 U.S.C. § 9601 ("CERCLA").

2. CSI asserts an injunctive right under 42 U.S.C. § 6972 ("RCRA").

3. A right is asserted for the recovery of costs expended by CSI pursuant to the California equivalent of CERCLA, § 25363(e) of the California Hazardous Substance Account Act ("HSAA").

4. The right of indemnity under § 11.-2(a) of the purchase agreement is asserted.

5. Various common law theories are asserted which CSI claims would give it a right to payment from Kaiser including nuisance, trespass, negligence, negligence per se, and equitable indemnity.

Resources has objected to the CSI claim on a variety of grounds. At this time, the matter is before the Court on two limited threshold issues. These are:

1. Whether the claim of CSI must be disallowed in whole or in part pursuant to the provisions of 11 U.S.C. § 502(e)(1)(B); and

2. Whether the claims of CSI have been discharged as a result of the entry of the order herein confirming the plan of reorganization.

The Court concludes that Section 502(e)(1)(B) of the Bankruptcy Code applies and that the claim of CSI must be disallowed to the extent it is a contingent claim for reimbursement or contribution as hereafter described. The Court further concludes that the claims asserted by CSI were discharged and cannot be enforced against Resources, the Reorganized Debtor.

I. THE CLAIM OF CSI IS SUBJECT TO DISALLOWANCE PURSUANT TO 11 U.S.C. § 502(e)(1)(B)

The Bankruptcy Code provides that a creditor's claim shall be allowed except that:

The Court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent—

. . . . .

(B) Such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.... 11 U.S.C. § 502(e)(1)(B).

CSI asserts that the claim it has filed herein is a direct claim against Kaiser, not one for contribution or reimbursement, and that CSI is not liable with Kaiser for or on account of the claim it asserts. The Court does not agree.

Any analysis of the effect of section 502(e) on the claim of CSI must start with some consideration of the types of claims that might be asserted by CSI. Recognizing that CSI purchased the property pre-petition from Kaiser and that Kaiser thereafter, to the date of confirmation, continued to own adjacent lands, CSI might conceivably assert claims for the following:

1. For fraud or misrepresentation in connection with CSI's purchase of the property. No such claim appears to have been asserted.

2. For the costs of cleanup of CSI's property which arise out of Kaiser's activities on the property when Kaiser owned it.

3. For damages to CSI's property caused by or arising out of the continued migration of hazardous materials from Kaiser's adjacent property.

4. For damages arising out of Kaiser's continued operations on its adjacent property to the date of confirmation.

The proof of claim filed herein by CSI asserts that Kaiser is liable on the claim based on a variety of legal theories including state law theories of trespass, nuisance, negligence and negligence per se. It is not clear from the claim or the briefs filed in connection with the objection to the claim whether Kaiser's activities which are alleged to give rise to liability under these theories occurred prior to CSI's purchase or after. This distinction is critical.

It does appear that CSI may be attempting to assert that Kaiser is liable to CSI for the damage done to the property prior to CSI's purchase on the theory that the toxic substances Kaiser left on the property when it sold the same to CSI were left there negligently by Kaiser or constituted a continuing trespass or nuisance on CSI's property.

■ If that is indeed the premise of the claim, it must fail. Regardless of whether Kaiser deposited the toxic substances on its property in violation of the environmental laws, the fact remains that the deposit was made *by* Kaiser on *its* property. It was not a tortious act nor a trespass when made. Nor did it violate any duty of care Kaiser owed to itself. Thus, CSI, as the successor-owner, cannot now assert a claim premised on such acts under a theory of continuing trespass or nuisance or negligence. *Mangini v. Aerojet–General Corp.*, 230 Cal.App.3d 1125, 281 Cal.Rptr. 827 (3rd Dist.Ct.App.1991); Restatement (Second) of Torts § 162.

■ Conversely, if CSI is asserting a claim that Kaiser, after it sold the property to CSI, committed a trespass by permitting toxic substances to migrate to CSI's property, or damaged CSI by maintaining a nuisance on the remaining property owned by Kaiser, or by Kaiser's negligence in the conduct of its business on its remaining property to the date of confirmation, resulting in a diminution in the value of CSI's property, such claims would be direct claims and maintainable by CSI. The damages arising out of these activities, to the extent they can be established, could potentially be recoverable by CSI by virtue of its claim. Those claims, if indeed they are being asserted, are not subject to disallowance pursuant to 502(e)(1)(B). CSI's remaining claims are all premised under the federal or state environmental laws or under the indemnification provisions of the purchase contract.[1]

---

1. The RCRA claim premised under 42 U.S.C. § 6972 asserts only a right to injunctive relief.

As such, it is a claim asserted for post confirmation relief as against Resources, the reorganized

CSI's claims premised under CERCLA arise by reason of the provisions of 42 U.S.C. § 9607. Under that statute, Kaiser, as the party which allegedly deposited hazardous substances on the property now owned by CSI, is liable for all costs of removal or remedial action incurred by the United States to remove the environmental hazard. Kaiser is also liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). Finally, Kaiser is liable for contribution to any other person who is liable or potentially liable under section 9607(a). 42 U.S.C. § 9613(f). CSI, as the owner of the property, is also liable for the cleanup costs. 42 U.S.C. § 9607(a)(1).

Liability under the California statute is similar. However, under the California statute, there does not appear to be a provision exactly comparable to Section 9607(a)(4)(B) of CERCLA.

CSI argues that it is asserting a direct claim against Kaiser under Section 9607(a)(4)(B) and not a claim for reimbursement or contribution. It would clearly appear that a claim for reimbursement or contribution under either the California statute, CERCLA or the indemnification provisions of the contract is, by definition, a claim to recover costs incurred by reason of CSI's liability for cleanup as the "owner" of the site, which is the same liability Kaiser has for cleanup as the party which deposited the hazardous substances in the first instance. Such a claim would necessarily be one for liability for which both Kaiser and CSI are responsible and would fall within the ambit of 11 U.S.C. § 502(e).

CSI's argument that it seeks allowance of a direct claim under Section 9607(a)(4)(B) is premised under the holding of *AL Tech Specialty Steel Corp. v. Allegheny International, Inc.* (*In re Allegheny International, Inc.*) 126 B.R. 919 (W.D.Penn.1991) ("*Allegheny*"). The facts in *Allegheny* are, for purposes of this discussion, nearly identical to the present case. There, the claimant, which had purchased a parcel of property from the debtor, sought to recover "response costs it has incurred and will directly incur in the future." *Allegheny, supra,* 126 B.R. at 923. The court found this to be a critical distinction and held that this claim, premised under 42 U.S.C. § 9607(a)(4)(B), was not subject to disallowance under section 502(e) of the Bankruptcy Code because the claimant did not seek reimbursement on a claim for which the claimant was liable with the debtor.

The error of the *Allegheny* court is demonstrated by its suggestions concerning how the claim should be provided for in a plan of reorganization. The court acknowledged its concern that allowance of the claim might subject the debtor to double liability if a claimant failed to clean up the site notwithstanding the debtor's contribution and the EPA filed a claim in the bankruptcy proceeding for cleanup costs or brought an action against the debtor for remediation of the site. The court's solution was that "the bankruptcy court can require that any distribution on AL Tech's claim be placed in a trust to be expended on the remediation of the waste sites." *Allegheny, supra,* 126 B.R. at 924. In this way a double recovery would be avoided.

The court's use of the trust device establishes the clear character of the claim which was being satisfied. The debtor was not being asked to satisfy a claim for injury to the claimant's property. Had that been the claim, the claimant most assuredly would have had the right to receive outright payments on its claim. Instead, the funds were to be placed in a trust so that they would be used to satisfy the obligation that both the debtor and the claimant had to the EPA for the remediation of the properties. The claimant was liable to the EPA with the debtor for remediation, and the claim clearly should have been disallowed under section 502(e)(1)(B).

So, too, in this case, what CSI seeks is contribution from Kaiser for the cost of cleanup of the CSI property. This is evident from the *opening sentence of CSI's response brief filed herein, which states:*

debtor, and is not subject to disallowance under section 502(e)(1)(B).

This proceeding, seeking disallowance of CSI's future response cost for cleaning up the forty years of pollution deposited by Kaiser on the CSI's property, represents the third, and final leg of Kaiser's strategy to accomplish precisely what it represented to creditors at its 341(a) meeting that it could not achieve—using the bankruptcy laws to avoid responsibility for environmental remediation. . . .

Further, the claim is contingent, at least to the extent that CSI had not, as of the date of confirmation, expended dollars in the satisfaction of its obligation as owner to commence remediation of the property. *Matter of Baldwin–United Corp.*, 55 B.R. 885 (Bankr.S.D.Ohio, 1985). Therefore, CSI's claims, premised under CERCLA and the California statutes, must be disallowed under 11 U.S.C. § 502(e)(1)(B). *In re Eagle–Picher Industries, Inc.*, 144 B.R. 765 (Bankr.S.D.Ohio, 1992); *In re Bicoastal Corp.*, 141 B.R. 231 (Bankr.M.D.Fla.1992).

CSI points to the fact that no government agency filed a claim in this bankruptcy proceeding for the recovery of cleanup costs of CSI property. Thus, CSI argues that this Court's ruling disallowing its claim creates a grave injustice because it will mean that Kaiser and Resources will escape all responsibility for Kaiser's acts. The answer, of course, is that application of section 502(e) is not premised on the actual filing of multiple claims but, rather, on the existence of such claims. Further, CSI had it within its power to avoid this result by filing a claim on behalf of the governmental agencies under 11 U.S.C. § 501, which it failed to do.

## II. THE CLAIMS OF CSI HAVE BEEN DISCHARGED BY THE ORDER CONFIRMING KAISER'S PLAN OF REORGANIZATION

■ CSI essentially asserts a right of recovery from two sources. One source would be as a claimant against Kaiser's estate, payment of which is provided for under the plan of reorganization. The other source is against Resources, the reorganized debtor, on the argument that the claim for remediation of the CSI property was not discharged by the order confirming the plan of reorganization. The parties have presented the dischargeability issue to this Court for determination as part of the claim objection process.

The essence of the position of CSI on the discharge issue can be gleaned from its closing brief filed herein. In an effort to take the CSI claims beyond the penumbra afforded by the Bankruptcy Code, CSI argues that Kaiser

seeks to ignore the unique status of environmental claims and instead analyzes those claims as if they arose out of a traffic accident. The fact is that environmental claims are unique because they do not exist at all until the government determines that certain hazardous waste sites pose a danger to the environment. CSI Reply Memorandum.

The problem with this position, simply put, is that the Bankruptcy Code does not have a separate category or classification for "unique claims."

Section 101(5) of the Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. . . ." A "debt" is defined as a "liability on a claim." 11 U.S.C. § 101(12). Pursuant to section 1141 of the Code, entry of the order of confirmation acted to discharge Kaiser of all debts that arose before the date of confirmation. 11 U.S.C. § 1141(d)(1)(A). More particularly, the order of confirmation entered herein specified that Kaiser would be discharged

from any claim and any "debt" (as that term is defined in Section 101(11) of the Code), and, as a result of the entry of this Order, Section 1141(d) of the Code and Article VIII of the Plan, [Kaiser's] liability and respect thereof is extinguished completely, whether reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arose from any agreement entered

into or obligation incurred before the confirmation date or from any conduct prior to the confirmation date, or that otherwise arose before the confirmation date....

The legislative history concerning the definition of "claim" has been often cited. It was the desire of Congress that the definition of "claim" be given the "broadest possible definition" so that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case ... and the broadest possible relief" can be afforded the debtor. H.R. 595, 95th Congress, First Session 309 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6266.

CSI argues that the environmental claims did not arise until such time as funds were expended in the cleanup of the spill of a hazardous product. It also argues that the "debt" which is discharged must be limited to those claims which were reasonably within the contemplation of the parties. For these general propositions, CSI relies on the case of *In re Penn Central*, 944 F.2d 164 (3rd Cir.1991), and the unpublished decision in the case of *In re National Gypsum*, 139 B.R. 397 (N.D.Tex. 1992).

Notwithstanding these cases, the fact is that the position espoused by CSI simply finds no support in the Bankruptcy Code. Indeed, as Kaiser aptly argues, the position presented by CSI has the effect of excising the terms "contingent", "unliquidated" and "unmatured," from the explicit definition of "claim" contained in 11 U.S.C. § 101(5).

In attempting to distinguish the "unique nature" of environmental claims, CSI argues that what causes environmental contamination to ripen into an environmental claim "is not the release of the contamination, but rather the determination by a responsible agency that the contamination is not appropriate for the particular site on which it was deposited." CSI Reply Memorandum. That argument, however, ignores the explicit provisions of CERCLA. That statute, which is the essential predicate of the CSI claim, states that:

Any person who *at the time of disposal* of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable.... 42 U.S.C. § 9607(a)(2) (emphasis added).

By these statutory provisions, Kaiser became liable "at the time of disposal" of any hazardous substance. Kaiser then owed a "debt" for the "claim" for the cleanup of such disposal even though that "claim" may then have been contingent, unliquidated and disputed. Claims which arise by reason of prepetition conduct are dischargeable in bankruptcy. *In the Matter of CMC Heartland Partners*, 966 F.2d 1143 (7th Cir.1992); *In re Grynberg*, 113 B.R. 709 (Bankr.Colo.1990); *Utah Division of Oil, Gas and Mining v. Kaiser Steel Corp. (In re Kaiser Steel Corp.)*, 87 B.R. 662 (Bankr.D.Colo.1988).

This Court's view of the scope of the discharge in cases such as this is supported by the decisions in *In re Jensen*, 127 B.R. 27 (9th Cir. BAP 1991) and *In re Chateaugay Corp.*, 944 F.2d 997 (2nd Cir.1991). In both cases those courts determined that a claim for unincurred environmental response costs arises at the time of the release of the hazardous substance.

This Court previously dealt with this issue, at least peripherally, in the case of *Utah Division v. Kaiser, supra*. In that case, the State of Utah was seeking relief from 11 U.S.C. § 362(a) in order to force the debtor-in-possession to comply with certain bonding obligations to assure performance of outstanding remediation claims. In that opinion, this Court, *in dicta*, expressed its view that the state's claims which pertained to Kaiser's prepetition actions were dischargeable as a part of the debtor's plan of reorganization.

CSI also points to this Court's opinion, in the above cited *Kaiser Steel* case, in support of its view that the remediation obligations are not discharged. It does so in reliance on that part of the opinion which stated:

As to the pre-petition activities of the debtor which were carried on in Utah, that state's claim against the debtor for

violation of its environmental laws, including the failure to reclaim, are clearly "claims" within the meaning of 11 U.S.C. § 101(4) and, as such, are subject to being dealt with in a plan and discharged as part of the debtor's plan of reorganization. However, as to this debtor's property in Utah, the debtor's discharge of its personal obligations under a plan, including its pre-petition obligation to reclaim the property, does not free the post-petition land owner (whether the debtor or any successor in interest) from an obligation to see to it that the environment is not being adversely affected by the property's continued unreclaimed condition. *Utah Division of Oil, Gas and Mining v. Kaiser Steel Corp., supra,* 87 B.R. at 662.

The reliance of CSI on the quoted language is misplaced. Indeed, it reflects a misunderstanding of the nature of the liabilities imposed by CERCLA and the effect of the order of confirmation. It is a misunderstanding which also plagued the circuit court in the *Chateaugay* opinion, *supra,* when it engaged in its analysis concerning the discharge of certain injunctive orders.

Liabilities under CERCLA attach in a variety of ways. The primary responsibility attaches under 42 U.S.C. § 9607(a)(2) on the party who was responsible for the disposal of the hazardous substance in the first instance. As this Court has held, liability for such an activity is subject to discharge in a bankruptcy proceeding such as this.

Liability can attach a second way and that is by way of ownership of the contaminated property. 42 U.S.C. § 9607(a)(1). Thus, CSI is responsible for the cleanup of the property it owns even though it may not have been responsible for the contamination of that property. In the same manner, Resources, the Reorganized Debtor, in which vested, at the time of confirmation, the ownership of the balance of the property previously owned by Kaiser, may be responsible for the remediation of the property it now owns. *In the Matter of CMC Heartland Partners, supra.* It is this liability to which the Court referred in the

*Kaiser* opinion cited above and it is this same type of liability to which the Supreme Court referred in the case of *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985).

CSI asserts that it has a sustainable claim against Resources under RCRA, 42 U.S.C. § 6972, for a "citizen's injunction" to force Resources to come to CSI's property and conduct remediation activities. The Court finds this argument to be without merit and that this claim is discharged. In this case, neither Kaiser nor Resources is in possession of the CSI property which CSI desires to have remediated. In order to comply with any such injunctive relief, Resources can do nothing but pay someone else to do the work. Thus, while CSI asserts its claim in the guise of an equitable remedy, it is in fact a monetary claim which was discharged.

CSI argues that the RCRA claim was not discharged because it is *only* a right to an equitable remedy which does not give rise to a right to payment. Thus, CSI asserts it is not a "claim" within the meaning of U.S.C. § 101(5).

This argument of CSI similarly is without merit. If and to the extent RCRA does give rise to a right to an equitable remedy "for breach of performance" (which is doubtful), that breach of performance is certainly subject to satisfaction by the payment of money to fund the remediation of the CSI property. Thus, it is a "claim" which was discharged upon the entry of the order of confirmation.

The Court has carefully considered the other arguments advanced by CSI in support of its assertion that its claims against Kaiser and Resources have not been discharged and has reviewed the authorities cited in support of those arguments. The Court recognizes that there are significant differences of opinion in this area. The Court believes the views set forth herein properly apply the law and that CSI's arguments to the contrary are not meritorious.

This order does not necessarily finally determine and resolve all of CSI's claims herein. Accordingly, and pursuant to the findings and conclusions made herein, it is

ORDERED, that CSI's claims for anticipated future remediation costs ARE DISALLOWED pursuant to 11 U.S.C. § 502(e)(1)(B); and it is

FURTHER ORDERED, that the claims of CSI arising out of the deposit by Kaiser of hazardous materials on the property now owned by CSI, or on Kaiser's property, ARE DISCHARGED; and it is

FURTHER ORDERED, that CSI shall, within forty-five (45) days of the date of entry of this order, file a statement specifying the nature of any claims that it asserts have not been disallowed pursuant to this order, the legal basis for such claims and the amount thereof, and serve a copy on counsel for Resources. Resources shall then have fifteen (15) days within which to file such objections as it deems appropriate to those claims, failing which such claims will be deemed allowed. If Resources objects, the Court will thereupon set a scheduling conference to resolve the issues.