In re **HEXCEL CORPORATION,**
Debtor-in-Possession.

**FINE ORGANICS CORPORATION,**
etc., Plaintiff,

v.

**HEXCEL CORPORATION,**
etc., Defendant.

Bankruptcy No. 93–48535 T.
Adv. No. 94–4253 AT.

United States Bankruptcy Court,
N.D. California.

Nov. 28, 1994.

Paul A. Epstein, Dennis D. Miller, Law Offices of Paul A. Epstein, San Francisco, CA, Richard E. Kummer, Kummer, Knox, Naughton & Hansbury, Parsippany, NJ, for plaintiff.

John M. Newman, Porzio, Bromberg & Newman, Morristown, NJ, Merle C. Meyers, Katherine D. Ray, Goldberg, Stinnett, Meyers & Davis, San Francisco, CA, for defendant.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

Defendant Hexcel Corporation ("Hexcel"), the above-captioned debtor, seeks partial summary judgment disallowing the claims of plaintiff Fine Organics Corporation ("Fine Organics") for future environmental response costs. Hexcel bases its motion on 11 U.S.C. § 502(e)(1)(B). For the reasons stated below, Hexcel's motion is granted.

### SUMMARY OF FACTS

Fine Organics purchased certain real property located in New Jersey (the "Real Property") from Hexcel in March 1986. At the time of the sale, both Hexcel and Fine Organics knew that Hexcel had discharged hazardous substances on the Real Property. The New Jersey Department of Environmental Protection & Energy (the "NJDEPE") was also aware of the contamination. At the time of the sale, Hexcel executed an Administrative Consent Order ("ACO") with the NJDEPE, in which Hexcel acknowledged its obligation to perform and pay for the remediation. Fine Organics did not execute the ACO. The sale agreement between Hexcel and Fine Organics (the "Asset Purchase

Agreement") requires Hexcel to perform its obligations under the ACO.

The ACO requires Hexcel to provide financial assurance for the remediation. Hexcel has not yet completed the remediation of the Real Property. However, Hexcel has submitted a cleanup plan and provided a $4 million letter of credit to the NJDEPE as financial assurance of its ability to fund the remediation. The NJDEPE has indicated that, at present, it is satisfied with Hexcel's plan and financial assurance.

## SUMMARY OF CLAIMS

In the complaint filed in the above-captioned adversary proceeding (the "Complaint"), Fine Organics alleges that Hexcel concealed or failed to disclose the full extent of the contamination and that it has failed to perform its remediation obligations under the Asset Purchase Agreement and ACO. Fine Organics seeks rescission, declaratory relief, and damages. Fine Organics has also filed a proof of claim in the bankruptcy case (the "Proof of Claim") seeking monetary recovery from the bankruptcy estate.

Hexcel's motion for partial summary judgment concerns two counts of the Complaint—Counts Two and Five—and one paragraph of the Proof of Claim—paragraph 6. Count Two asserts a claim for contribution against Hexcel pursuant to § 58:10–23.11f.a.(2) of the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J.S.A. 58:10–23.11 *et seq.*, as amended by the Industrial Site Recovery Act ("ISRA"), P.L.1993, c. 139, including a claim for treble damages in the amount of $32,000,000. Count Five asserts a claim for contribution pursuant to § 2A:53A–2 of the New Jersey Joint Tortfeasors Contribution Act (the "Joint Tortfeasors Contribution Act"), N.J.S.A. § 2A:53A–1 *et seq.* (1993). Paragraph 6 of the Proof of Claim seeks damages in the amount of $7,500,000 for Fine Organics' future expenses of remediating the Real Property.

## APPLICABLE LAW

Hexcel seeks partial summary judgment disallowing the claims asserted in Counts Two and Five of the Complaint and paragraph 6 of the Proof of Claim pursuant to 11 U.S.C. § 502(e)(1)(B). Summary judgment is proper when there are no genuine issues of material fact. The burden of establishing that there are no such issues is on the moving party, in this instance, Hexcel. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986) (dissent).

Fine Organics contends that there are genuine issues of material fact precluding summary adjudication of the issues presented here. However, it fails to identify a single genuine issue of fact which the Court considers material to its decision. Thus, summary adjudication of the issues presented by this motion appears proper.

Section 502(e)(1)(B) of title 11 provides as follows:

> ... the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor ... to the extent that—
>
> . . . . .
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution;
> ...

Courts have generally construed § 502(e)(1)(B) as containing three criteria: The claim must be contingent (the "First Criterion"). The claim must be for reimbursement or contribution (the "Second Criterion"). Finally, the claimant must be co-liable with the debtor with respect to the claim (the "Third Criterion"). *In re Dant & Russell, Inc.,* 951 F.2d 246, 248 (9th Cir. 1991).

Section 58:10–23.11g.c.(1) of the Spill Act provides, in pertinent part, as follows:

> [A]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred....

Section 58:10–23.11f.a.(2) of the Spill Act provides, in pertinent part, as follows:

> Whenever one or more dischargers or persons cleans up and removes a discharge of

a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance....

Section 2A:53A–2 of the Joint Tortfeasor's Act states that "[t]he right of contribution exists among joint tortfeasors." Joint tortfeasors are defined as "two or more persons jointly or severally liable in tort for the same injury to person or property...." N.J.S.A. § 2A:53A–1 (1993).

## DISCUSSION

### A. SHOULD FINE ORGANICS' COMPENSATORY CLAIMS BE DISALLOWED UNDER 11 U.S.C. § 502(e)(1)(B)?

#### 1. ARE CLAIMS CONTINGENT?

■ Fine Organics' claims clearly meet the First Criterion—that the claims be contingent. The claims are for amounts that Fine Organics *might* be required to spend at some time in the future if Hexcel fails to perform the remediation. Claims which may never mature are by definition contingent. *See In re Eagle Picher Industries, Inc.*, 164 B.R. 265, 268 (S.D.Ohio 1994). Hexcel has expressly excluded from its motion any claim by Fine Organics for amounts it has already spent.

#### 2. ARE CLAIMS FOR CONTRIBUTION OR REIMBURSEMENT?

Fine Organics' claims also clearly meet the Second Criterion—that they be claims for contribution or reimbursement. Fine Organics contends that its claims do not meet this criterion because they are not contribution claims. According to Fine Organics, a contribution claim may only be asserted by one

co-liable person against another. Fine Organics denies any present liability with respect to the claims in question. It admits that it may be held liable with respect to the claims at some point in the future. However, it contends that this does not constitute co-liability.

Fine Organics' contention that a contribution claim may only be asserted by one co-liable party against another appears to be correct. *See United Technologies Corp. v. Browning–Ferris Indus.*, 33 F.3d 96, 99 (1st Cir.1994). ("[C]ontribution" is a "standard legal term" referring "to a claim 'by and between jointly and severally liable parties'....")[1] *See also In re Hemingway Transport, Inc.*, 993 F.2d 915, 931 (1st Cir. 1993) (noting distinction between "contribution" claim available to co-liable parties under § 9613(f) and cost recovery action available to nonco-liable parties under § 9607(a)(4)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*).

Therefore, if Fine Organics is correct in its assertion that it is not co-liable with Hexcel with respect to the claims asserted, its claims would not be contribution claims. However, Fine Organics' claims would nevertheless meet the Second Criterion. If its claims are not contribution claims, they are certainly claims for reimbursement. The Second Criterion is satisfied by claims for reimbursement as well as by contribution claims.

#### 3. IS FINE ORGANICS' CO–LIABLE WITH HEXCEL?

##### a. *Joint Tortfeasors Contribution Act Co–Liability.* Count V of the Complaint seeks contribution under the Joint Tortfeasors Contribution Act. Fine Organics makes no intelligible argument why any claim under this Act would not be a contribution claim. Fine Organics would presumably contend

---

1. In *United Technologies*, the court was required to determine the relationship between § 9607(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, which authorizes cost recovery actions, and § 9613(f), which authorizes contribution claims. In *United Technologies*, a party with a contribution claim had failed to assert the claim within the three year limitations period provided by § 9613(f) and was attempting to assert the claim under § 9607(a), which has a six year limitations period. The court concluded that the two provisions were mutually exclusive and that a contribution claim could only be asserted under § 9613(f).

that it is not a joint tortfeasor since the environmental damage purportedly occurred before its purchase of the Real Property. However, if Fine Organics is not a joint tortfeasor, it can have no claim under the Joint Tortfeasors Contribution Act. As a result, Hexcel's motion for partial summary judgment should clearly be granted and the claims asserted in Count V disallowed.

**b. *Spill Act Co–Liability.*** The principal issue presented by this motion is whether Fine Organics is co-liable with Hexcel with respect to the claims asserted in Count Two of the Complaint. These claims are ostensibly based on § 58:10–23.11f.a.(2) of the Spill Act. Like § 9613(f) of CERCLA, § 58:10–23.11f.a.(2) of the Spill Act refers to the claims it authorizes as "contribution" claims. For the reasons stated by the Court in *United Technologies,* such a claim may only be asserted by a co-liable party. Thus, if Fine Organics is correct that it is not co-liable, its claim under § 58:10–23.11f.a.(2) must necessarily fail.

However, § 58:10–23.11g.c.(1) imposes strict liability on dischargers and certain other persons for cleanup costs "no matter by whom incurred." Arguably, § 58:10–23.11g.c.(1) creates a private right of action for reimbursement by a private party who cleans up contaminated property although not legally obligated to do so similar to that created by § 9607(a) of CERCLA. If so, it would not be inconsistent for Fine Organics to assert a claim for reimbursement (as opposed to contribution) and at the same time deny co-liability. The Court will assume this to be the true basis for Fine Organics' claim in Count Two and that, as a result, the Court must address the issue of co-liability to determine whether summary judgment should be granted.

▇ Fine Organics bases its contention that it is not co-liable primarily on the fact that its liability is at present contingent. Under New Jersey's Environmental Cleanup Responsibility Act ("ECRA"), N.J.S.A.

§§ 13:1K–6, *et seq.,* as amended by ISRA, before the owner or operator of an industrial facility may transfer title to real property on which an industrial facility is maintained, the owner or operator must obtain approval by the NJDEPE of either (1) a "negative declaration"—that there has been no release of hazardous substances on the real property or that any such contamination has been cleaned up—or (2) a remediation plan and a funding source. N.J.S.A. § 13:1K–9.b.(2) and (3). In the latter instance, the owner or operator must then perform the remediation unless someone else assumes responsibility for doing so. N.J.S.A. § 13:1K–9.c. If the owner or operator fails to perform the remediation, after giving the seller notice and opportunity to cure the defaults, the purchaser may void the sale and seek damages from the seller. N.J.S.A. § 13:1K–13.a.

As the owner and operator of an industrial facility located on the Real Property prior to its sale to Fine Organics, Hexcel has been ordered to perform the remediation. However, by purchasing the Real Property, Fine Organics itself became an owner and operator subject to the provisions of ECRA. As Fine Organics concedes, it may be required to perform the remediation if any of a number of triggering events occur—e.g., if Fine Organics should wish to transfer title to the Real Property or to cease operations. N.J.S.A. §§ 13:1K–9. Moreover, not all of the triggering events are voluntary. A tax sale may trigger liability as well as a voluntary sale. N.J.S.A. § 13:1K–9.1.[2]

▇ The legislative history surrounding the enactment of 11 U.S.C. § 502(e)(1)(B) reveals that § 502(e)(1)(B) was primarily intended to protect the limited assets of a bankruptcy estate from duplicative claims. In particular, § 502(e)(1)(B) was intended to prevent a guarantor from filing a contingent claim for indemnification (before honoring its guaranty) which would compete with the non-contingent claim of the party to whom the debtor was primarily liable. *In re Dant &*

---

**2.** Hexcel also contends that Fine Organics is co-liable because, after acquiring title to the Real Property, Fine Organics itself discharged hazardous substances on the Real Property. It is questionable whether the record contains competent

evidence of these subsequent spills. However, whether or not it does, the Court does not believe that any such subsequent spills create co-liability. As to the damage caused by these subsequent spills, Hexcel would not appear to be liable.

*Russell, Inc.,* 951 F.2d 246, 248 (9th Cir.1991) (citing S.Rep. No. 95–989, 95th Cong., 2nd Sess. 65 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5851).

While Fine Organics' liability is subject to a few more contingencies than a typical guarantor's claim, the purpose of the statute is equally served by disallowance of Fine Organics' claims. If Fine Organics' claim were allowed to stand, it would compete with and duplicate the claim of the NJDEPE.[3] Both claims are directed to the same need to remediate the Real Property.

Had Hexcel not yet been ordered to perform the remediation, under *Dant & Russell,* Fine Organics might well have prevailed in its contention that it is not co-liable. In *Dant & Russell,* the Environmental Protection Agency ("EPA") had compelled some remediation which the claimant had completed. However, the claimant also asserted a claim against the debtor based on future expenses for remediation that had not yet been compelled. The Ninth Circuit held that, absent compulsion, there could be no co-liability. For that reason, the *Dant & Russell* court refused to apply 11 U.S.C. § 502(e)(1)(B) to disallow the portion of the claim relating to future remediation expenses. *See In re Dant & Russell, Inc.,* 951 F.2d 246, 248 (1991).[4]

The viability of this holding was recently called into question by a comment by the United States Supreme Court in *Key Tronic Corp. v. United States,* —— U.S. ——, ——, 114 S.Ct. 1960, 1966, 128 L.Ed.2d 797 (1994), cited in *United Technologies v. Browning–Ferris Industries,* 33 F.3d 96, 99, n. 8 (1st Cir.1994). In *Key Tronic,* the Court states

that a party who is "potentially" co-liable to remediate property and who performs the remediation without governmental prodding may have an *implied* contribution claim under § 9607(c) as well as an express contribution claim under § 9613(f)(1). If a contribution claim may only be asserted by a co-liable party, and if the comment in *Key Tronic* is correct, a party may be co-liable even if a governmental agency has not yet compelled the remediation. In this case, however, unlike *Dant & Russell,* the remediation upon which Fine Organics' claims are based has been compelled.

Fine Organics may also rely to some extent on *In re Allegheny Intern., Inc.,* 126 B.R. 919 (W.D.Pa.1991), *aff'd without op.* 950 F.2d 721 (3d Cir.1991) in opposing disallowance of its claims under 11 U.S.C. § 502(e)(1)(B). In *Allegheny,* the court concluded that a claim for future environmental response costs could not be disallowed under 11 U.S.C. § 502(e)(1)(B) to the extent that the claim was for amounts that the claimant might itself spend to remediate the real property. The *Allegheny* court distinguished such a claim from one for future amounts that the claimant might pay to reimburse a governmental agency for remediation performed by the agency itself. The *Allegheny* court found the distinction "crucial." The court reasoned as follows:

... although both debtor and AL Tech [the claimant] are liable for the waste remediation, should AL Tech undergo the cleanup itself, debtor is liable directly to AL Tech pursuant to § 9607(a).

*In re Allegheny Intern., Inc.,* 126 B.R. at 923.

---

**3.** The bank that issued Hexcel's $4 million letter of credit, by which Hexcel has provided financial assurance to the NJDEPE of its ability to complete the remediation, has filed a surrogate proof of claim on behalf of the NJDEPE.

**4.** The *Dant & Russell* court did disallow the claim under § 9607(a) of CERCLA. The court found that § 9607(a) did not permit a monetary judgment for *future* expense costs, that it only permitted declaratory relief, establishing and apportioning liability for costs that have not yet been incurred. *In re Dant & Russell, Inc.,* 951 F.2d at 249–50. Any claims that Fine Organics asserts under § 58:10–23.11g.c.(1) of the Spill Act appear to be subject to disallowance on this

ground as well. Like § 9607(a) of CERCLA, § 58:10–23.11g.c(1) of the Spill Act appears to grant a claim for reimbursement only with respect to "cleanup and removal costs ... [that have been] incurred." This is less clear with respect to a claim for contribution under § 58:10–23.11f.a.(2) of the Spill Act. The first sentence of that subsection suggests that the claim does not accrue until "... [a discharger or person] cleans up and removes a discharge of a hazardous substance...." However, the next sentence states that "... [a contribution plaintiff] need prove only that a discharge occurred for which ... [it is] liable...."

The *Allegheny* decision was criticized in *In re Cottonwood Canyon Land Co.*, 146 B.R. 992 (Bankr.D.Colo.1992). In *Cottonwood Canyon*, it was noted that *Allegheny* had acknowledged the possibility that its decision might subject the debtor to double liability: i.e., if AL Tech did not use the proceeds of any dividend on its claim to remediate the real property and a governmental agency compelled the debtor to perform or pay for the remediation. The *Allegheny* court suggested that a trust might be established to preserve any payments on AL Tech's claim for their intended purpose. The *Cottonwood Canyon* court concluded that there would have been no need for such a trust were there not co-liability. *In re Cottonwood Canyon Land Co.*, 146 B.R. at 996. This point is well taken.

Moreover, in determining whether there was co-liability, the *Allegheny* court appears to have focussed on the wrong liability. It appears to have focussed on AL Tech's liability to any contractors that AL Tech might hire to perform the remediation. *Allegheny* at 923–24. Granted, the debtor would have no liability to these contractors. However, the liability at issue was the debtor's and the claimant's liability to the governmental agency, not the claimant's hypothetical liability to some future contractor. The debtor and the claimant clearly shared this former liability. Similarly, here, Hexcel and Fine Organics are clearly co-liable to the NJDEPE.

## B. SHOULD CLAIM FOR TREBLE DAMAGES BE DISALLOWED?

Fine Organics also seeks treble damages in the amount of $32,000,000 pursuant to § 58:10–23.11f.a.(3) of the Spill Act. That section provides that the NJDEPE may:

> ... authorize parties who have entered into an agreement with the department to clean up and remove or arrange for the cleanup and removal of a hazardous substance and who seek contribution, to collect treble damages from any contribution defendant who has failed or refused to comply with any directive, was named on the directive, and who is subject to contribution pursuant to this subsection.

Fine Organics contends that Hexcel has either failed to comply with its obligations under the ACO or might do so in the future. In that event, Fine Organics might enter into an agreement with the NJDEPE to perform the cleanup and might obtain authorization from the NJDEPE to collect treble damages from Hexcel. Hexcel objects to this portion of Fine Organics' claim on the ground that Fine Organics has not satisfied the requirements of the statute: e.g., it has not obtained authorization from the NJDEPE to collect the treble damages.

The Court agrees that this claim should be disallowed. However, it bases its decision on grounds other than those cited by Hexcel. Fine Organics might have been poised to seek such authorization just when the bankruptcy petition was filed. The automatic stay of 11 U.S.C. § 362 might have prevented it from seeking this authorization. Fine Organics' failure to obtain such authorization to date merely makes the claim contingent.

However, the Court views the claim for treble damages as inseparable from Fine Organics' claim for potential future response costs. Since the compensatory portion of this claim is subject to disallowance under 11 U.S.C. § 502(e)(1)(B), there is no allowable claim to which the penalty may attach. Therefore, the claim for treble damages should be disallowed as well.

## CONCLUSION

Fine Organics' claims, as asserted in Counts Two and Five of the Complaint and in paragraph 6 of the Proof of Claim, will be disallowed under 11 U.S.C. § 502(e)(1)(B) to the extent the claims asserted are for amounts not yet expended to remediate the Real Property. Fine Organics' claim for treble damages is disallowed as a nonseverable penalty portion of a claim subject to disallowance under 11 U.S.C. § 502(e)(1)(B). Counsel for Hexcel is directed to submit a proposed form of order in accordance with this decision.