In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.

Bankruptcy No. 1–91–00100.

United States Bankruptcy Court, S.D. Ohio, W.D.

Sept. 16, 1992.

Stephen Karotkin, Peter M. Gillon, James D. Barnette, Debra A. Daudeneau, Weil, Gotshal & Manges, New York City, for Eagle-Picher Industries, Inc.

Rasmussen Dump Site, Steven C. Nadeau, Dickinson, Wright, Moon & Van Dusen, Detroit, Mich.

Amy Bateson, Clark, Klein & Beaumont, Bloomfield Hills, Mich., for BASF Corp.

Mark Edie, Ford Motor Co., Dearborne, Mich.

Michele Gutman, Babst, Calland, Clements & Zomnir, Pittsburgh, Pa., for Nat. Steel Corp.

William C. Roush, Dykema Gossett, Bloomfield Hills, Mich., for Federal Screw Works.

Keith J. Lerminiaux, Dickinson, Wright, Moon & Van Dusen, Detroit, Mich.

Robert A. Emmett, Reed, Smith, Shaw & McClay, Washington, D.C., for Detrex Corp.

Troy Taylor, Dykema Gossett, Detroit, Mich., for Gen. Motors Corp. and RPM, Inc.

David L. Maurer and Thomas P. Wilczak, Pepper, Hamilton & Scheetz, Detroit, Mich., for TRW, Inc. and Uniroyal Goodrich Tire Co.

Michael D. Zarin, Sive, Paget & Riesel, P.C., New York City.

## DECISION ON DEBTORS' SECTION 502(e)(1)(B) MOTIONS RE (1) RASMUSSEN DUMP SUPERFUND SITE and (2) SPRINGFIELD TOWNSHIP SUPERFUND SITE

BURTON PERLMAN, Chief Judge.

Eagle–Picher Industries, Inc. ("EPI"), debtor-in-possession, has filed two motions to disallow certain groups of claims:

1. Rasmussen Dump Site Proofs of Claim. BASF, Chrysler, Detrex, Ford, General Motors, Hoechst Celanese, Johnson Controls, Kelsey Hayes, National Steel, TRW, and the Rasmussen Dump Site Steering Committee (collectively the "Rasmussen Claimants"), each filed a virtually identical proof of claim, each of which seeks $19,377,031.25 relating to the Rasmussen Dump Site. The Claims are composed of: (1) $7,030.25 for Eagle–Picher's share of "site administration activities" undertaken to date, pursuant to the Participation Agreement; (2) $1,020,000 in EPA response costs through April 30, 1991, which EPA is seeking from the claimants, but which have not been paid; and (3) a total of "$18,350,000" in future costs, comprised of (a) $16,000,000 for a permanent remedy at the site, (b) $250,000 in legal and administrative fees, (c) future EPA and MDNR oversight costs of $750,000 and $150,000 respectively, (d) an additional $200,000 in EPA oversight costs after May 1, 1991, and, (e) $500,000 in "miscellaneous costs."

2. Springfield Township Site Proofs of Claim. BASF, Chrysler, Detrex, Federal Screw Works, Ford, General Motors, Hoechst Celanese, National Steel, TRW, and Uniroyal (collectively the "Springfield Township Claimants"), each filed a virtually identical proof of claim, each of which seeks an estimated $11,623,750 to $19,623,750 relating to the Springfield Township Site. The Claims, as explained in a two-page appendix attached to each Claim, are composed of: (1) $23,750 for assessments Eagle–Picher committed to pay pursuant to the Participation Agreement; (2) $2,600,000 in total EPA and MDNR costs, of which $1,936,000 is specified to be what "EPA has sought to recover from Claimant" and other PRPs; and, (3) anywhere from

$9,000,000 to $17,000,000 for what "Claimant reasonably anticipates that the future costs of the remedial action at this site will be...."

In each motion EPI seeks the disallowance of all portions of the respective group of claims except for category (1) in each respective group of claims. When we refer hereafter to "claimants," the term should be understood to refer to all of those holding claims in both groups. Because the issues raised in the separate motions are identical, this single decision will serve to dispose of both motions.[1]

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. §§ 157(b)(2)(A) and (B).

The motions to disallow arise out of similar facts. In each case, the U.S. Environmental Protection Agency ("EPA") sent letters to EPI before EPI filed its chapter 11 petition, informing EPI that it was a potentially responsible party ("PRP") for the cleanup of the Sites. The letters alleged that EPI's Fabricon Automotive Division had arranged for the disposal of hazardous wastes at the Sites in the late 1960's. The EPA also sent similar letters informing the Claimants of their status as PRPs with respect to the Sites. The purpose of these letters was to notify the PRPs that pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9604(a) (§ 104(a) according to CERCLA's internal numbering)), the EPA and the Michigan Department of Natural Resources had initiated Remedial Investigation/Feasibility Studies to determine what further action should be taken. The EPA issued a Record of Decision for each Site, indicating the government's intention to take remedial actions. The EPA subsequently issued to EPI and the other PRPs Special Notices of Liability ("Special Notice Letters"), in which the EPA reiterated the PRPs' status as parties liable for remediating the Sites. The letters demanded reimbursement for past and future response costs relating to the cleaning up of the Sites.[2] In response to the Special Notice Letters sent by the EPA, the Rasmussen Claimants entered into a Consent Decree and the Springfield Claimants entered into an Administrative Order (the Decree and Order will hereafter be referred to as the "Consent Orders") under which the Claimants became obligated to clean up the Sites. EPI is not a party to the Consent Orders.

EPI subsequently filed for bankruptcy under Chapter 11 on January 7, 1991. The Claimants each filed essentially identical proofs of claim against EPI. The Claims are based on the following facts: (1) the EPA alleges that EPI and the Claimants are each jointly and severally liable under CERCLA § 107(a)(3) for the cost of cleaning up hazardous waste allegedly disposed of at the Sites; (2) the Claimants have entered into an agreement with the government to perform the cleanup; and (3) the Claimants seek contribution payments from EPI for past and future response costs.[3]

Pursuant to its motions, EPI seeks disallowance of all portions of the Claims except for its share of past response costs, which EPI and the other PRPs incurred pursuant to prepetition agreements. EPI reserves its right to object to claims relating to past

---

1. In addition to memoranda filed herein in opposition to the motions by the Springfield and Rasmussen Claimants, a memorandum in opposition was also filed by "Interested Parties". The Interested Parties apparently are claimants who have filed proofs of claim herein for past and future response costs relating to hazardous sites located in Jasper County, Missouri, and Cherokee County, Kansas. The claims of the Interested Parties are not in issue here.

2. While CERCLA does not define the phrase "response costs," it does provide that "response" refers to the cleanup or removal of hazardous substances from the environment. CERCLA § 101(23).

3. According to CERCLA, the EPA may use "Superfund" money-federal money derived from a tax on chemical producers—to pay for remediating hazardous waste sites. Section 107(a) of CERCLA establishes strict liability on responsible parties to the United States for response costs subject to four statutory defenses. Section 113(f), in turn, codifies a right of contribution on behalf of a PRP or a group of PRPs who engage in cleanup.

response costs at a future date. EPI argues that the future claims should be disallowed pursuant to § 502(e)(1)(B) of the Bankruptcy Code. This section provides in relevant part:

... the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

The main purpose of § 502(e)(1)(B) is to prevent competition between a creditor and its surety or co-obligor for the assets of the debtor's estate. H.R.Rep. No. 595, 95th Cong., 1st Sess. 354 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The parties agree that a claim should be disallowed under § 502(e)(1)(B) if (1) the claim is for reimbursement or contribution; (2) the claim is asserted by an entity co-liable with the debtor on a primary creditor's claim; and (3) the claim is contingent as of the time of disallowance. *In re Dant & Russell,* 951 F.2d 246, 248 (9th Cir.1991); *In re Charter,* 862 F.2d 1500, 1502 (11th Cir. 1989). The parties also agree that the claim is for reimbursement, since the Claimants seek payment by EPI for costs to be incurred and their Claims arise under § 113(f) of CERCLA, which provides for an express right of contribution. The parties disagree, however, as to whether the co-liability and contingency standards under § 502(e)(1)(B) are met. EPI argues that liability under CERCLA to perform a cleanup or compensate the government for the cost it incurs in performing that cleanup is established when a party is notified by a government agency of its liability though that liability remains unresolved. Thus, EPI contends that it is co-liable with the Claimants to the EPA for future cleanup costs because they all have received Special Notice Letters from the EPA informing them of their status as PRPs and demanding that they remediate the sites.

1. Co-liability: We first address whether EPI is liable to both the Claimants and the EPA for future cleanup costs relating to the Sites. A determination of EPI's liability rests on a two-step process. First, it must be determined whether the Special Notice Letters sent to EPI and the Claimants, as co-PRP's, establish liability for purposes of § 502(e)(1)(B). Next, we must decide whether EPI's liability, if it exists, has been extinguished by the Consent Orders entered into by the Claimants and the EPA, as the Claimants argue.

■ The case of *In re Hemingway Transport, Inc.,* 126 B.R. 656, 661–62 (D.Mass.1991), is instructive as to the determination of liability in the first instance. In *Hemingway,* as in the instant matter, the EPA notified both the claimant and the debtor of their status as potentially responsible parties for past and future response costs. *Id.* at 662. The claimant in *Hemingway* argued that it and the debtor were not both liable to the EPA, since the EPA had not yet filed a proof of claim against the debtor. *Id.* at 661. The court rejected the claimant's narrow reading of § 502(e)(1), pursuant to which the claimant had argued that the words "the court shall disallow any claim for reimbursement or contribution of an entity that *is liable* with the debtor" required an adjudication of liability. *Id.* (emphasis added). The court determined that such a narrow reading would contravene an important purpose underlying the disallowance of contingent contribution claims of "enabling distribution to unsecured creditors without a reserve for these types of contingent claims." *Id.* (quoting *In re Wedtech,* 85 B.R. 285, 290 (S.D.N.Y.1988)). Thus, the district court in *Hemingway* affirmed the bankruptcy court in holding that the naming by EPA of both the claimant and the debtor as PRPs rendered them co-liable pursuant to § 502(e)(1)(B). *Id.* at 662. *Cf. In re Charter,* 862 F.2d 1500, 1502–03 (11th Cir.1989) (claims contingent on outcome of pending lawsuit disallowed under § 502(e)(1)(B)); *In re Kent Holland Die Casting & Plating,* 125 B.R. 493, 501 (Bankr.W.D.Mich.1991) (same). In *Hemingway,* the EPA was deemed a creditor even though, as in the instant matter, it had not filed a proof of claim. The interpretation of the *Heming-*

*way* court relating to establishing liability under § 502(e)(1)(B) is sound, and leads us to conclude that the Special Notice Letters sent by the EPA to the Claimants and EPI render them co-liable for future response costs.

■ The Claimants argue that even if the EPA Special Notice Letters rendered both them and EPI liable, the Consent Orders, pursuant to which the Claimants assumed the responsibility for remediating the Sites, absolve EPI of any liability to the EPA. Moreover, argue the Claimants, their assumption of the cleanup obligations authorizes them to pursue EPI directly for contribution under CERCLA § 107. EPI, for its part, asserts that the Consent Orders between the Claimants and the EPA, to which EPI was not a signatory, did not absolve EPI of potential liability to the EPA. In fact, argues EPI, the EPA expressly retained its right to seek contribution from EPI to the extent that the Claimants do not complete the remediation of the Sites. EPI suggested at the hearing on this matter that it would remain co-liable for the cleanup unless the Claimants indefeasibly guaranteed that it would pay the cleanup costs, for example, by effecting a letter of credit or by establishing a trust.

We agree with EPI that pursuant to the Consent Orders, the EPA expressly reserved the right to pursue EPI for future cleanup costs. The Rasmussen Consent Decree, whose following language is similar to the Springfield Administrative Order, provides:

> Nothing in this Consent Decree shall constitute or be construed as a release or a covenant not to sue regarding any claim or cause of action against any person, firm, trust, joint venture, partnership, corporation or other entity not a signatory to this Consent Decree for any liability it may have arising out of relating to the Facility. The United States and each of the Settling Defendants expressly reserve the right to continue to sue any person, other than the Parties, in connection with the Facility.

Rasmussen Consent Decree, at para. 69.

In sum, EPI and the Claimants are co-liable to the EPA for future cleanup costs

with respect to the Sites. Further, the liability of EPI is not extinguished pursuant to the Consent Orders since EPI is not a signatory, and the EPA has retained its right to sue EPI for unpaid cleanup costs in connection with the Sites.

■ 2. Contingency: The Claimants also argue that their Claims are not contingent within the meaning of § 502(e)(1)(B). The Claimants contend that the Claims are not contingent since the obligations of the Claimants to pay cleanup costs have been fixed by the entry of the Consent Orders. However, as EPI correctly states, the law is well-settled that the claim of a co-liable party under § 502(e)(1)(B) is contingent until the claimant has made payment on its underlying claim to the principal creditor and "thereby fixes his own right to payment from the debtor." *In re Hemingway Transport*, 126 B.R. at 662 (quoting 3 *Collier on Bankruptcy* para. 502.05, at 502–88 (15th ed. 1990)); *In re Baldwin–United Corp.*, 55 B.R. 885, 895 (Bankr.S.D.Ohio 1985). In the instant matter, despite having filed amended claims fixing their future liability, the Claimants have not yet incurred future response costs and therefore cannot be said to have fixed their right of payment. Their Claims are therefore contingent pursuant to § 502(e)(1)(B).

In addition to the foregoing arguments, the Claimants say that disallowing their claims would defeat the policy objectives of CERCLA, namely, that parties responsible for environmental contamination must share equally in the costs of cleanup. The Claimants contend that CERCLA and bankruptcy policy would be harmonized if this Court invoked its equitable powers under § 105 and "determine[d] EPI's liability at the Site 'for costs when and if incurred.' " Springfield Claimants' Memorandum at 16 (quoting *Dant & Russell*, 951 F.2d at 250). They argue that EPI's share of future cleanup costs should then be placed in a trust, the proceeds from which would be disbursed to the parties which perform the cleanup. The Interested Parties support the Claimants' trust suggestion, and also request an estimation hearing to determine

EPI's share of the liability for the cleanup, which share could then be funded through a trust facility.

We will address the Claimants' policy argument first. We agree with EPI that § 502(e)(1)(B) promotes rather than contravenes the policy objectives of CERCLA. The Eleventh Circuit case of *In re Charter*, 862 F.2d 1500, 1503–04 (11th Cir.1989), contains a discussion about the relationship between § 502(e)(1)(B) and CERCLA. Congress amended CERCLA in 1986 to promote expeditious and thorough cleanup of hazardous waste sites by authorizing private parties who assume financial responsibility for a cleanup to seek contribution from other responsible parties before a determination of who necessitated it. *Id.* at 1503 (citing H.R.Rep. No. 253, 99th Cong., 1st Sess. 100, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2882). Congress apparently believed that private parties would be more willing to expend resources on a cleanup if they were assured of their right to seek contribution from others. *Id.* at 1504 (citing H.R.Rep. No. 253, 99th Cong., 1st Sess. 80, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2862). The *Charter* court concluded that § 502(e)(1)(B) of the bankruptcy court fosters, rather than discourages, expeditious cleanup of a hazardous waste site since those seeking contribution will be required to incur the expenses relating to a cleanup before stating an allowable claim. *Id.* at 1504. Similarly, in the instant case, the Claimants possess only a contingent claim until they pay for the cleanup of the Sites. The prospect of seeking contribution from EPI and other PRPs is a reward for assuming the costs of remediation that encourages the Claimants to commit the necessary resources to remediate the Sites. We therefore reject the Claimants' argument that the policy goals of CERCLA are undermined by the operation of § 502(e)(1)(B) in this matter.

We next consider the suggestion that a trust be established to distribute funds from EPI's estate to fund its liability for future cleanup costs. The proposal to establish a trust in this matter is inappropriate because it does not address the disallowance issues of § 502(e)(1)(B). A trust would not change the co-liability status of the parties in our case or the contingent nature of the Claims, and therefore would not allay the risk of double recovery which § 502(e)(1)(B) was enacted to prevent. As to the request by the Interested Parties for an estimation hearing, estimation of contingent liability for purposes of claims allowance pursuant to § 502(c) is a method of treating direct contingent claims rather than contingent claims of co-liable parties. *See* 3 *Collier on Bankruptcy* para. 502.05, at 502–87–88 (15th ed. 1990) (§ 502(e)(1)(B) applies to claims of entities secondarily liable, while § 502(c) applies to claims of the debtor's creditors)). The proposals relating to an estimation hearing and trust facility are therefore rejected.

Thus, after careful consideration of the equitable and legal arguments of the parties in this action, we hold that the claims should be disallowed. This determination is based on a straight-forward reading of § 502(e)(1)(B) and is further supported by the legislative history of that section, which "requires disallowance of a claim for reimbursement or contribution of a co-debtor, surety or guarantor of an obligation of a debtor, unless the claim of the creditor on such obligation has been paid in full." S.Rep. No. 95–989, 95th Cong., 2d Sess. 65 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5851; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6310. In response to the arguments of the Claimants and the Interested Parties that this disallowance is an unfair result that will allow EPI to avoid paying its fair share of environmental liability, we observe that our ruling today deals only with allowability of the claims which have been filed, not with ultimate clean-up liability. Further, to the extent that the Claimants and Interested Parties find that the straightforward application of the Bankruptcy Code yields a harsh result with respect to CERCLA (though we disagree), an appropriate resolution to any perceived conflict between the policies of CERCLA and the Bankruptcy Code is to be

found in Congress rather than the courts. *In re Chateaugay Corp.*, 944 F.2d 997, 1002 (2d Cir.1991). The Claims of the Springfield and Rasmussen Claimants are hereby disallowed pursuant to § 502(e)(1)(B) of the Code.