In the Matter of HARVARD INDUS-TRIES, INC., Individually and d/b/a Elastic Stop Nut (ESNA) and also, d/b/a Harvard Interiors, et al., Debtors.

Bankruptcy Nos. 91–404, 91–479 to 91–487.

United States Bankruptcy Court, D. Delaware.

April 12, 1993.

See also 138 B.R. 10.

George J. Miller, Ethan D. Fogel, Sarah B. Gelb, Dechert Price & Rhoads, Philadelphia, PA, for West Co. of Puerto Rico, Inc., Caribe General Elec. Products, Inc., Motorola Telcarro De Puerto Rico, Inc., and the Puerto Rico Indus. Development Co. (the "PRPs").

Sheldon Schachter, Audrey S. Stern, Glenn R. Reiser, Lum, Hoens, Conant, Danzis & Kleinberg, Roseland, NJ.

Richard G. Elliott, Jr., Todd V. Jones, Richards, Layton & Finger, Wilmington, DE, for PRPs.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

On April 15, 1992, the Debtors filed a motion to disallow and/or estimate and re-classify claims of potentially responsible parties at the Vega Alta Superfund site. While the motion contemplated multiple legal and factual issues, there is only one remaining issue of legal consequence—whether the court should disallow certain portions of those claims pursuant to § 502(e)(1)(B). This is the court's ruling on this core proceeding. 28 U.S.C. § 157(b)(2)(B).

## I. Facts

For the purposes of this ruling, the parties have designated various documents of record they wish the court to consider. In addition, the court takes judicial notice of other matters of record in these Chapter 11 proceedings. The court finds the following material facts.

Situated in Vega Alta, Puerto Rico is a well field that serves the public water supply of Vega Alta. The United States Environmental Protection Agency asserts the well field site (the Vega Alta site) is contaminated with hazardous substances. In March 1989, the EPA issued an administrative order pursuant to 42 U.S.C. § 9606(a) (CERCLA). The administrative order named the following respondents: The West Company of Puerto Rico, Inc. (West), Motorola Telcarro de Puerto Rico, Inc. (Motorola), Caribe General Electric Products, Inc. (GE), Puerto Rico Industrial Development Company (PRIDCO), and Harman Automotive Puerto Rico, Inc. (Harman), a subsidiary of Harvard Industries, Inc. The administrative order requested the respondents to develop and implement a preliminary cleanup plan for the Vega Alta site, as well as provide an alternative drinking water supply for the local residents. West, Motorola, and Harman (but not GE or PRIDCO) undertook to comply with the order on a provisional cost-sharing basis. In September 1990, the EPA issued a second administrative order relating to the cleanup of the site. GE has incurred response costs in connection with the implementation of this order.

Also in September 1990, the EPA filed a complaint in the United States District

Court for the District of Puerto Rico against the above five entities. The complaint sought damages for response costs the EPA had already incurred, and for a declaratory judgment that the Defendants are liable for future response costs that the EPA will incur. GE cross-claimed against each of the other co-defendants for its own past or future response costs pursuant to 42 U.S.C. § 9607(a) and for contribution pursuant to 42 U.S.C. § 9613(f). The other Defendants also filed cross-claims against each other.

An involuntary Chapter 11 petition was filed against Harvard Industries in this court on April 11, 1991, and an order for relief was entered on April 30, 1991. Harman and several other Harvard subsidiaries filed Chapter 11 petitions in this court on May 2, 1991.

The EPA filed an omnibus proof of claim against the Debtors for $10,682,237.06. This proof of claim relates to the alleged liability of Harvard and several of its subsidiaries under CERCLA at eight sites on the national priority list. The EPA's claim relating to the Vega Alta site seeks payment from Harman[1] for all unreimbursed costs it has incurred, which totaled $1,530,119.17 at the time the EPA filed its proof of claim. Docket No. 616, Exhibit A, ¶ 4(a). The proof of claim reserves the right to amend the amount to account for "additional costs incurred during the pendency of these bankruptcy proceedings." *Id.*, ¶ 6.

Each of the Vega Alta potentially responsible parties (other than Harman) also filed a proof of claim against Harman. West's claim is for past response costs of $730,444.21 and future response costs it will incur at the Vega Alta site. West's claim also includes a component for "claims of an undetermined amount arising with regard to [West's] and Debtors' status as Potentially Responsible Parties in the Vega Alta Superfund litigation." Claim No. 1906, ¶ 2. West's claim reserves the right to amend its proof of claim.

The claims of Motorola, GE and PRIDCO are similarly structured and are based upon the same facts and law. Each asserts a claim for past costs, for future out-of-pocket costs, and for contribution for its own liability arising out of the Vega Alta litigation. GE claims past costs of $7,294,147.47; Motorola claims past costs of at least $252,235.00; PRIDCO claims an undetermined amount.

On March 18, 1992, this court lifted the automatic stay of 11 U.S.C. § 362(a) against the Vega Alta litigation pending in the United States District Court for the District of Puerto Rico. *Caribe General Elec. Prod. v. Harvard Indus.*, M91–479, Docket No. 10.

On April 15, the debtors filed the instant motion for an "Order disallowing and/or estimating and reclassifying claims of Potentially Responsible Parties at the Vega Alta Site pursuant to sections 502(b)(1), (c) and (e)(1)(B)." Case No. 91–404, Docket No. 915. Thereafter, however, the Debtors moved for approval of a stipulation governing the treatment of the claims of the four potentially responsible parties (PRPs) that resolved many aspects of this motion. The stipulation provided that:

1.  The PRPs' claims would not be subject to a section 502(c) estimation proceeding;

2.  The debtors would withdraw their motion to disallow, and/or estimate and reclassify the PRPs' claims with prejudice, except to the extent that the motion "seek[s] disallowance of claims for future costs under Section 502(e)(1)(B);" and

3.  "The PRPs' claims against the Debtors for the purposes of distribution shall be determined in the District Court litigation and shall become Allowed Claims ... within the meaning of the plan as of the first date that the District Court for the District of

---

1.  The proof of claim actually names "Harman Automotive, Inc.", another subsidiary of Harvard, as the liable debtor at the Vega Alta site. None of the parties have suggested the difference between this subsidiary and the Harman

Automotive Puerto Rico, Inc. subsidiary is relevant to the narrow § 502(e)(1)(B) issue presently before the court. Therefore, all future references to either of these subsidiary debtors shall continue to be to "Harman."

Puerto Rico ... makes a determination ... of the PRP's claims."

*In re Harvard Indus.*, Case No. 91–404, Docket No. 1207, Exhibit C at 2–3. This court approved that stipulation on July 21, 1992.

Separate plans of reorganization for Harvard and Harman were confirmed on August 10, 1992. For the purposes of this Opinion, the material portions of these two plans are the same. The plans define an "allowed claim" as "the amount determined by a ... final judgment or order of a Court of Competent Jurisdiction with respect to [a filed proof of claim]." *E.g.*, Case No. 91–404, Docket No. 1109, ¶ 1.08.

Each of the claims of the four Vega Alta PRPs falls within class six. The EPA's claim falls within class seven. Class six and class seven allowed claims are paid in full in 20 quarterly installments with interest.

## II. *Discussion*

The Debtors assert that on these facts, the "future costs" components of each of the claims of the four other Vega Alta PRPs should be disallowed as a matter of law pursuant to § 502(e)(1)(B). The PRPs disagree. The "future costs" components refers to each claim for future out-of-pocket costs each PRP anticipates expending arising out of the EPA orders and Vega Alta litigation, as well as each claim for contribution arising out of the Vega Alta litigation.

Section 502(e)(1)(B) states:

[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, ... the claim of a creditor, to the extent that—

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution[.]

A. The contribution claims are disallowed.

■ Application of this section to each contingent contribution claim of each PRP requires that all these claims be disallowed.

Each claim is for contribution from the Debtors for payment on the claim of a creditor—the cleanup costs incurred by the EPA. The PRPs and the Debtors are jointly and severally liable for these costs under CERCLA. Disallowance of these contingent contribution claims avoids the possibility of multiple payment from the Debtors' estates for the same liability. *E.g.*, *In re Harvard Indus.*, 138 B.R. 10, 12 (Bankr. D.Del.1992).

B. The future out-of-pocket costs are allowed.

■ Section 502(e)(1)(B) does not, however, operate to disallow the part of each PRP's claim for future out-of-pocket costs. This claim is not a claim for reimbursement or contribution within the meaning of § 502(e)(1)(B), as none of the PRPs are "liable with the debtor[s]" to the EPA for these costs. The EPA has no "claim," or right to payment, 11 U.S.C. § 101(5), for response costs a PRP incurs to clean up the Vega Alta site. To the contrary, these anticipated response costs form the basis for a direct contingent claim. A prior Opinion in these Debtors' Chapter 11 proceedings has already held that section 502(e)(1)(B) does not operate to disallow a direct contingent claim. *In re Harvard Indus.*, 138 B.R. 10, 13 (Bankr.D.Del.1992). That decision, which was not appealed, is the law of the case and is binding upon the Debtors in the present motion. *See also Air Line Pilots Assoc. v. Continental Airlines (In re Continental Airlines, Inc.)*, 145 B.R. 404, 409–12 (D.Del.1992) (applying *res judicata* doctrine in Chapter 11 proceedings).

The Debtors attempt to distinguish the prior *Harvard* decision by referring to the fact that here the EPA has issued an administrative order, initiated litigation against the PRPs under CERCLA, and filed its own proof of claim. These facts do not change the nature of the PRP's claim against Harman. The claim is still for out-of-pocket costs the PRP will incur, for which it can seek to recover from Harvard pursuant to § 9607(a). There is no possibility of multiple payment here—to the extent

a PRP cleans up the Vega Alta site, the remaining cleanup exposure to the other PRPs and the EPA will correspondingly decrease.[2]

The Debtors have also attempted in their legal memoranda filed over the course of nearly a year to "reargue" the prior *Harvard* decision by citing caselaw from other jurisdictions they believe supports their position. The court does not sanction this attempt.

Moreover, those cases are consistent with the law of the case here. For example, *In re Charter Co.*, 862 F.2d 1500 (11th Cir.1989) addressed a much simpler set of facts where the PRPs' claims were wholly based upon their requests for indemnity or reimbursement arising out of their potential liability in pending environmental litigation. The *Charter* court explicitly did *not* rule on the situation where PRPs assert direct response costs. *Id.* at 1503.

In a recent letter memorandum, the Debtors cite *In re Eagle–Picher Indus.*, 144 B.R. 765 (Bankr.S.D.Ohio 1992), *appeal docketed*, No. C–1–92–948–950 (S.D.Ohio Dec. 2, 1992). In that case, each Superfund PRP filed a proof of claim seeking payment for the *full* future response cost to clean up the site. *Id.* at 766–67. Pursuant to section 502(e)(1)(B), the *Eagle–Picher* court disallowed these claims.

That case does not help the Debtors here. Allowance of those claims would have resulted in multiple distribution by the Debtor EPI on the same liability. Moreover, the PRP-claimants in *Eagle–Picher* were seeking *contribution* payments based upon 42 U.S.C. § 9613(f). 144 B.R. at 767 & n. 3, 768. Indeed, the *Eagle–Picher* court explicitly observed that the PRP-claims were not "direct contingent claims." *Id.* at 770.

C. The time of disallowance.

■ The only remaining issue is one of timing—section 502(e)(1)(B) disallows only those contribution claims that are "contin-

gent at the time of allowance or disallowance." Reading the Debtors' stipulation on its section 502 motion in conjunction with the plans' definition of an allowed claim, this date is when the District Court for the District of Puerto Rico finally determines the PRPs' claims. *In re Harvard Indus.*, Case No. 91–404, Docket No. 1207, Exhibit C at 3. Therefore, all contribution claims still contingent on that date are disallowed.

III. *Conclusion*

An order in accordance with this Opinion is attached.

### *ORDER*

AND NOW, April 12, 1993, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. The motion of Debtors pursuant to § 502(e)(1)(B) to disallow the claims of West Company of Puerto Rico, Inc., Motorola Telcarro de Puerto Rico, Inc., Puerto Rico Industrial Development Company, and Caribe General Electric Products, Inc. seeking contribution from Harvard Industries or any of its subsidiary debtors for their (the claimants) own liability to the United States Environmental Protection Agency under 42 U.S.C. § 9601 *et. seq.* (CERCLA) is **GRANTED** to the extent those contribution claims are contingent at the time of allowance or disallowance.

2. The motion of Debtors pursuant to § 502(e)(1)(B) to disallow the claims of West Company of Puerto Rico, Inc., Motorola Telcarro de Puerto Rico, Inc., and Puerto Rico Industrial Development Company, and Caribe General Electric Products, Inc. is otherwise **DENIED**.

---

**2.** While this court can only speculate as to the outcome of the Vega Alta litigation, to the extent Harman is obligated to pay monies to other PRP's before they have performed their cleanup obligations, those monies can be placed in trust, as discussed in the prior *Harvard* decision. 138 B.R. at 14.