### In re EAGLE PICHER INDUSTRIES, INC.

**Civ. Nos. C–1–92–948 to C–1–92–950.**

United States District Court, S.D. of Ohio, W.D.

Feb. 16, 1994.

---

Grady Pettigrew, Jr., Columbus, OH, Linda Parker, Detroit MI, for plaintiff.

Edmund Adams, Cincinnati, OH, for defendant.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon three appeals filed from a decision issued by the Honorable Burton Perlman, Judge of the United States Bankruptcy Court for the Southern District of Ohio, in a Chapter 11 bankruptcy proceeding.[1] Claimants appeal the bankruptcy court's order of September 16, 1992, disallowing claims relating to two hazardous waste sites known as the Rasmussen Dump Site and the Springfield Township Site (*In Re Eagle–Picher Industries, Inc.*, 144 B.R. 765 (Bkrtcy.S.D.Ohio 1992)).

### Stay of Proceedings

On March 16, 1993, this court issued an order staying the proceedings in this matter in light of ongoing settlement negotiations

---

1. Case No. C–1–92–948 is brought by Johnson Controls, Inc., National Steel, Inc., Chrysler Corporation, Ford Motor Company, Hoechst Celanese Corporation, General Motors Corporation, Detrex Corporation, and BASF, collectively known as the "Rasmussen claimants". Case No. C–1–92–949 is brought by Federal Screw Works, National Steel Corporation, Ford Motor Company, Springfield TWP Site Steering CMTE, Uniroyal Goodrich Tire Company, General Motors Corporation, Detrex Corporation, and TRW, Inc., collectively known as the "Springfield Township claimants". Case No. C–1–92–950 is brought by St. Joe Minerals Corporation, Sun Company, Inc., Brown & Root, Inc., USX Corporation, E.I. de Pont de Nemours & Company, and AMAX, Inc., collectively known as the "Interested Parties". The claims of the Interested Parties are not in issue here.

between EPI and the Environmental Protection Agency (EPA). The court directed the parties to supply a status report to the court every thirty days apprising the court of the status of the negotiations. On July 15, 1993, the court issued an order in which it (1) vacated the stay because the parties had failed to file reports in compliance with the court's order, and (2) established a briefing schedule. The parties have submitted their briefs and the appeals are now ripe for disposition. The court finds that an oral hearing is not necessary.

### Procedural History

In the bankruptcy court, EPI filed two motions to disallow claims filed by the Rasmussen claimants and the Springfield Township claimants. The claim filed by the Rasmussen claimants consists of $7,030.25 for EPI's share of site administration activities undertaken to date at the Rasmussen Dump Site pursuant to an agreement between the Rasmussen claimants and the EPA known as the "Participation Agreement"; $1,020,000 in EPA response costs through April 30, 1991, which the EPA is seeking from claimants but which have not been paid; and $18,350,000 in future costs. The claim filed by the Springfield Township claimants amounts to $23,750 for assessments EPI committed to pay pursuant to the Participation Agreement; $2,600,000 in total EPA and Michigan Department of Natural Resources (MDNR) costs; and $9,000,000 to $17,000,000 for what claimants reasonably anticipate future costs of remedial action at the site will be. The EPI sought disallowance of all claims except for its share of past response costs. EPI has reserved its right to object to claims relating to past response costs at a future date.

The bankruptcy court set forth the following facts which gave rise to the filing of the claims and EPI's motion to disallow same: Prior to EPI's filing of its Chapter 11 petition, the EPA sent letters to EPI and the claimants notifying each that it was a potentially responsible party (PRP) for the cleanup of the sites in question. The purpose of

the letters was to notify the PRPs that pursuant to the Comprehensive Environmental Response, Compensation & Liability Act (CERCLA), 42 U.S.C. § 9604(a), the EPA and MDNR had initiated Remedial Investigation/Feasibility Studies to determine what further action should be taken with regard to the sites. The EPA issued a Record of Decision for each site, indicating the government's intention to take remedial action. The EPA then issued to the PRPs Special Notices of Liability, reiterated the PRPs' status as parties liable for remediating the sites, and demanded reimbursement for past and future response costs relating to the cleanup of the sites. In response, the Rasmussen claimants entered into a consent decree and the Springfield Township claimants entered into an Administrative Order with the EPA under which they became obligated to clean up the sites. EPI was not a party to either the decree or the order.

On January 7, 1991, EPI filed for bankruptcy. The claimants filed essentially identical proofs of claim against EPI based on the following facts: (1) the claimants were jointly and severally liable under CERCLA § 107(a)(3) for the cost of cleaning up hazardous waste allegedly disposed of at the sites; (2) the claimants have entered into an agreement with the government to perform the cleanup; and (3) the claimants seek contribution payments from EPI for past and future response costs.[2]

EPI moved the bankruptcy court to disallow the contested claims pursuant to § 502(e)(1)(B) of the Bankruptcy Code. Section 502(e)(1)(B) provides, in pertinent part, that,

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution ...

**2.** CERCLA § 107(a) establishes strict liability on responsible parties to the United States for response costs, subject to four statutory defenses.

CERCLA § 113(f) codifies a right of contribution on behalf of a PRP or group of PRPs who engage in a cleanup.

The parties agreed that the claims should be disallowed if (1) the claims are for reimbursement or contribution, (2) the claims are asserted by an entity co-liable with the debtor on a primary creditor's claim, and (3) the claim is contingent as of the time of the disallowance.[3] The parties further agreed that the claims in issue are for reimbursement, since the claimants seek payment from EPI for costs to be incurred and their claims arise under CERCLA § 113(f), which provides for an express right of contribution. However, the claimants argued that the second and third conditions for disallowance are not met in this case.

The bankruptcy court held that the contested claims should be disallowed under § 502(e)(1)(B). First, the court found that co-liability had been established in that the Special Notice Letters to EPI and the claimants established liability for purposes of § 502(e)(1)(B). In so holding, the court adopted the reasoning of the district court in *In re Hemingway Transport, Inc.,* 126 B.R. 656, 661–62 (D.Mass.1991), *vacated and remanded,* 993 F.2d 915 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993). The court rejected claimants' argument that even if the EPA Special Notice letters rendered both the claimants and EPI liable, the consent orders pursuant to which the claimants assumed responsibility for remediating the sites absolved EPI of any liability to the EPA. The bankruptcy court found that pursuant to the consent orders, the EPA had expressly reserved the right to pursue EPI for future cleanup costs: Therefore, EPI and the claimants were co-liable to the EPA for such costs.

With regard to the contingency requirement, the bankruptcy court rejected the claimants' argument that their claims were not contingent because liability (the obligation to pay cleanup costs) had been fixed by entry of the consent orders. The court stated that the law is well-settled that the claim of a co-liable party under § 502(e)(1)(B) is contingent until the claimant has made payment on its underlying claim to the principal creditor and thereby fixes his own right to payment from the debtor. In so holding, the court again relied on the district court's decision in *Hemingway.* The court found that because in this case the claimants have not yet incurred future response costs, they cannot be said to have fixed their right of payment and the claims are therefore contingent.

Further, the bankruptcy court dismissed the claimants' argument that disallowing their claims would defeat the policy objectives of CERCLA. The bankruptcy court found that § 502(e)(1)(B) fosters the purpose of CERCLA, which is to promote the expeditious cleanup of hazardous waste sites by authorizing private parties who assume financial responsibility for a cleanup to seek contribution from other responsible parties before a determination of who necessitated the cleanup is made. The bankruptcy court noted that Congress believed this goal would be met and parties would be more willing to expend resources on a cleanup if they were assured of their right to seek contribution from others. The bankruptcy court found that § 502(e)(1)(B) furthers this goal by requiring those who seek contribution to incur the expense relating to a cleanup before stating an allowable claim.

Finally, the bankruptcy court found the claimants' proposal to establish a trust pursuant to § 502(c) of the Bankruptcy Code to be inappropriate since that provision does not address the disallowance issues of § 502(e)(1)(B).[4] The court also rejected the claimants' request for an estimation hearing on the ground that an estimation of contingent liability for purposes of claims allowance pursuant to § 502(c) is a method of treating direct contingent claims, i.e., the claims of the debtor's creditors, rather than claims of co-liable parties.

### The Claimants' Objections

The claimants contend that the bankruptcy court erred in applying a straightforward

---

3.  A claim is a right to payment, whether fixed or contingent. 11 U.S.C. § 101(5). A creditor is an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.

4.  Section 502(c) provides that contingent claims may be estimated if their liquidation "would unduly delay the administration of the case".

reading of § 502(e)(1)(B). They argue that by disallowing their claims, the bankruptcy court failed to apply the exception adopted by most courts that a creditor's contingent claim for direct environmental response costs is not subject to disallowance under § 502(e)(1)(B). In addition, the claimants contend that the bankruptcy court wrongly dismissed tools available under CERCLA and the Bankruptcy Code to reconcile the needs of the debtor with expeditious cleanup of a hazardous waste site and cost allocation. They claim that the court should have conducted a § 502(c) estimation hearing to determine the maximum amount of EPI's cleanup liability and that the court should have used its authority to establish a trust fund under § 105.

The claimants further contend that the bankruptcy court's disallowance of their claims is an impractical solution that contravenes the policy objectives of CERCLA. They believe that to require them to shoulder the full burden of the remediation costs would frustrate the CERCLA policy objectives of fostering expeditious cleanups and assigning responsibility to those who caused the harm.

Finally, claimants note that the *Hemingway* decision on which the bankruptcy court relied was recently vacated on appeal. See *In re Hemingway Transport, Inc.*, 993 F.2d at 915. They claim that the standard framed by the appellate court for disallowing a claim, which imposes on the debtor the burden of establishing by substantial evidence that the claimant and debtor are co-liable to the EPA on the same debt, was not met in this case.

### Standard of Review

■ In reviewing the decision of a bankruptcy court, the district court may set aside findings of fact made by the bankruptcy court only if such findings are "clearly erroneous". *In re Arnold*, 908 F.2d 52, 55 (6th Cir.1990). The district court must apply a *de novo* standard of review to all conclusions of law drawn by the bankruptcy court. *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988).

### Opinion

The findings of fact made by the bankruptcy court are not clearly erroneous. Accordingly, the court must determine whether these facts support disallowance of the claims in issue under § 502(e)(1)(B).

### I. Co–Liability and Contingency Requirements

■ The Court will first address the claimants' contention that by disallowing their claims, the bankruptcy court failed to apply the exception adopted by most courts that a creditor's contingent claim for direct environmental response costs is not subject to disallowance under § 502(e)(1)(B). Claimants submit that by failing to apply this exception, the bankruptcy court ignored the distinction between (1) contingent claims against other PRPs for response costs claimants might directly incur pursuant to CERCLA § 107, and (2) contribution claims under § 113(h). Claimants also submit that the court ignored the view espoused by other courts that § 502(e)(1)(B) does not apply to claims by a private party seeking to recover from another PRP response costs it incurred in remediation of a hazardous waste site pursuant to § 107(a)(4)(B) (42 U.S.C. § 9607(a)). However, as discussed below, the cases cited by claimants and the applicable law do not mandate the conclusion that disallowance of the claims in issue is improper.

Among the cases cited by defendant is the appellate decision in *Hemingway*, which overturned in part the district court's decision on which Judge Perlman relied. In *Hemingway*, the EPA had named the debtor as a PRP and had issued an order requiring it to remediate a site at its own expense. A claimant who had likewise been named as a PRP filed a proof of claim for future response costs. The district court deemed the EPA to be a creditor, even though it had not filed a proof of claim, and held that the EPA's naming of both the claimant and debtor as PRPs rendered them "co-liable" pursuant to § 502(e)(1)(B). The court therefore disallowed the claim for future response costs on the ground that the claim was a contingent CERCLA contribution claim based on a

debt owed the EPA for which the debtor and claimant were jointly liable.

On appeal, the court held that Congress did not exempt CERCLA claims from disallowance under § 502(e)(1)(B). *Hemingway*, 993 F.2d at 925. However, a debtor who objects to allowance of a claim under that provision must establish by substantial evidence that the claim is for CERCLA contribution. *Id.* To establish that a claim is for CERCLA contribution, the debtor must show that: (1) the debtor is contingently "liable" to the EPA for future response costs, and (2) the claimant is liable to the EPA on the same debt. *Id.*

The appellate court found that the sole purpose of § 502(e)(1)(B) is to preclude redundant recoveries on identical claims against insolvent estates. *Id.* at 923. Although the EPA in that case had failed to timely file a proof of claim, the court found that the EPA in fact held a prepetition claim and that it might yet file an allowable claim: Thus, there existed a remote possibility of "double-dipping" by holders of the same underlying claim against the estate. However, the court determined that this possibility could be eliminated if the trustee were required to file a surrogate claim on behalf of the EPA pursuant to § 501(b) and (c) of the Bankruptcy Code. Accordingly, the court vacated the lower court's order disallowing the claim. It ordered that the claimant or trustee must file a surrogate claim as a precondition to disallowance of the contingent claim. *Id.* at 927–28.

The appellate decision in *Hemingway* does not undermine the bankruptcy court's reasoning in the present case. The appellate court simply determined that the harsh results stemming from the application of § 502(e)(1)(B) could be alleviated by the use of the surrogate claim filing procedure of § 501(c). The court recognized that § 501(c) is permissive, not mandatory, and is designed primarily to prevent creditors from depriving debtors of the benefit of a discharge under § 727 of the Bankruptcy Code. The appellate court did not disturb the lower court's determination in *Hemingway* that the claimant and debtor as PRPs were co-liable and that the EPA was a creditor, even though it

had not filed a proof of claim. Further, the two-prong standard enunciated by the *Hemingway* court for determining whether a claim is for CERCLA contribution is met in this case, since EPI as a named PRP is contingently liable to the EPA for future response costs and claimants are liable to the EPA on the same debt. Accordingly, the appellate decision in *Hemingway* does not dictate that the claims before the court be allowed.

A second case on which claimants rely, *In the Matter of Harvard Industries, Inc.*, 138 B.R. 10 (Bkrtcy D.Del.1992), likewise does not support the conclusion that disallowance of the contested claims is improper. The debtor in *Harvard Industries* sought to disallow a claim by a PRP for response costs. The court held that the contingent portion of the claim was not subject to disallowance pursuant to § 502(e)(1)(B). In so holding, the court relied on a three-step analysis found in *In re Allegheny Int'l, Inc.*, 126 B.R. 919 (W.D.Pa.1991), *aff'd without op.*, 950 F.2d 721 (3d Cir.1991). The first prong of this analysis was whether § 502(e)(1)(B) applies to *direct* contingent claims. The *Allegheny* court answered this question negatively, finding that only claims involving joint or secondary liability owed to a third-party creditor are disallowed. The second prong was whether the substantive law recognizes a direct claim by one PRP against another. The *Allegheny* court answered this question affirmatively. It found that 42 U.S.C. § 9607(a) allows a direct action for recovery of response costs incurred by a nongovernmental entity. The third prong was whether the claim before the court was a direct claim or a claim based upon joint or secondary liability. In this regard, the court noted that the distinction between a cleanup performed by a PRP and one performed by the EPA is crucial. Where a party does not seek to recover funds owed to a third party such as the EPA, but instead seeks to recover sums it has personally expended and will expend in the future to remediate hazardous waste sites, § 502(e)(1)(B) does not apply. The court reasoned that § 502(e)(1)(B) does not protect against contingent liability, but protects only against multiple liability on contin-

gent debts. The court noted that double liability could occur in a case where a PRP has recovered costs for personal expenditures if the PRP failed to clean up a site and the EPA then brought an action against the debtor. However, the court found that this problem could be resolved through the establishment of a trust.

The decision in *Allegheny* has been criticized. See *In re Cottonwood Canyon Land Co.*, 146 B.R. 992 (Bkrtcy.D.Colo.1992). The court in *Cottonwood* rejected the holding in *Allegheny* as error, noting that the *Allegheny* court's use of a trust device to avoid double liability on the part of the debtor clearly demonstrated that the claimant was liable to both the EPA and the debtor for remediation: Therefore, the claim should have been disallowed under § 502(e)(1)(B).

This court finds the reasoning in *Cottonwood* to be persuasive. As in *Cottonwood,* the claimants before the court seek reimbursement from EPI for costs anticipated to be incurred in connection with a cleanup ordered by the EPA. Double liability could occur under the circumstances of this case since the EPA remains free to pursue EPI for remediation costs should the claimants fail to fulfill their cleanup obligations. Accordingly, the claims must be disallowed under § 502(e)(1)(B).

The remaining cases cited by claimants do not support a contrary conclusion. See *In re Matter of Harvard Industries, Inc.*, 153 B.R. 668 (Bkrtcy.D.Del.1993); *In re New York Trap Rock Corp.*, 153 B.R. 648 (Bkrtcy. S.D.N.Y.1993); and *In re Dant & Russell, Inc.*, 951 F.2d 246 (9th Cir.1991). In these cases, the courts found that the requirements for disallowance were not met on one or more of the following grounds: (1) the claims were not claims for reimbursement or contribution within the meaning of § 502(e)(1)(B);

(2) the co-liability requirement was not satisfied because there was no third party to whom the claimant was liable together with the debtor, and (3) there was no multiple liability on the debtor's part for the claim. In contrast, the claims in issue here are properly characterized as contingent claims for contribution or reimbursement, rather than as direct contingent claims. Further, the co-liability requirement is met in that the EPA has issued Special Notice Letters to the claimants and the debtor and EPI has not been absolved of liability by virtue of the claimants' agreements with the EPA. Third, there is a possibility of multiple liability in this case. As stated above, the EPA has reserved its right to pursue EPI for costs related to the cleanup of the sites involved. If the claimants fail to perform the cleanup, there is no bar to the EPA attempting to recover such costs from EPI. Indeed, the Springfield Township claimants have acknowledged EPI's potential exposure to multiple liability. Thus, the cases cited by the claimants do not support the proposition that disallowance of the claimants' CERCLA claims is improper.[5]

After having reviewed the relevant statutory and case law, the court is persuaded that the claims in issue are for contribution or reimbursement, that they are asserted by an entity co-liable with the debtor on a primary creditor's claim, and that the claims are contingent. Thus, the three requirements for disallowance under § 502(e)(1)(B) have been met as to the challenged portions of claimants' CERCLA claims. Therefore, the claims should be disallowed.

### *Policy*

■ Although the requirements for disallowance have been met in this case, claimants

---

**5.** In fact, these cases lend some support for disallowing the claims. Specifically, the court in *New York Trap Rock* acknowledged that where a contingent CERCLA claim depends upon the parties' co-liability to the EPA, the claim is disallowable as a claim for reimbursement or contribution. Further, in finding disallowance of the claims before it to be improper, the court in *Harvard Industries,* 153 B.R. at 668, distinguished the bankruptcy court's decision in this case. The court noted that in this case, each PRP had filed

a proof of claim seeking payment of the full future response costs to clean up the site and that allowance of those claims would have resulted in multiple distribution by EPI on the same liability. The court also pointed out that the bankruptcy court in this case explicitly observed that the PRP claims are not direct contingent claims, whereas the *Harvard Industries* court made the opposite finding with regard to the claims before it.

contend that disallowance of their claims contravenes the policy objectives of CERCLA. They argue that to disallow their claims would defeat the goal of CERCLA that parties responsible for environmental contamination share equally in the costs of the cleanup. Claimants allege that it is impossible for them to liquidate their claims at this time because the average remediation cost for a superfund site is over $25 million and the length of time typically required for remediation is over a decade. They contend that to require a claimant to shoulder the full burden of remediation costs, without hope of partial recovery unless the claimant is willing to fully fund a cleanup, would frustrate the CERCLA policy objectives of fostering expeditious cleanup and assigning responsibility to those who caused the harm. Claimants submit that this burden would provide a disincentive for voluntary cleanup and for early settlement agreements. They suggest that the court harmonize CERCLA and bankruptcy policy by invoking its equitable powers and determining EPI's liability at the site for costs when and if incurred pursuant to § 502(c). Claimants propose that EPI's share of future cleanup costs should then be placed in a trust, the proceeds from which would be disbursed to the parties who perform the cleanup.

The court rejects claimants' proposition that disallowance of their claims emasculates the policy objectives of CERCLA. The main purpose of CERCLA is to promote expeditious cleanup of hazardous waste sites by authorizing private parties who assume financial responsibility for a cleanup to seek contribution from other responsible parties before a determination of who necessitated the cleanup is made. See *Hemingway*, 993 F.2d at 924–25; *In re Charter*, 862 F.2d 1500, 1503–04 (11th Cir.1989). A subsidiary goal is to promote equitable allocations of environmental cleanup costs among responsible parties. *Hemingway*, 993 F.2d at 924–25. Although disallowance under § 502(e)(1)(B)

may impede this subsidiary goal, disallowance does not conflict with CERCLA's main policy objective. *Id.* Rather, as noted by the bankruptcy court in this case, § 502(e)(1)(B) fosters the primary objective of CERCLA by requiring those who seek contribution to incur the expenses relating to a cleanup before stating an allowable claim.

■ The court also rejects the claimants' proposal for an estimation hearing and establishment of a trust.[6] The bankruptcy court held that the estimation of contingent liability pursuant to § 502(c) is a method of treating direct contingent claims rather than the claims of co-liable parties. In so holding, the court relied on 3 Collier para 502.05 at 502–87–88, wherein it is stated that § 502(c) applies to the claims of the debtor's creditors. This court agrees that because the claims in issue in this case are the claims of co-liable parties, an estimation hearing is inappropriate.

■ With regard to the claimants' contention that the bankruptcy judge should have established a trust, the bankruptcy court held that such proposal was inappropriate because it does not address the disallowance issues of § 502(e)(1)(B). Because the disallowed claims meet the requirements of § 502(e)(1)(B), this court agrees that the establishment of a trust is not appropriate under the circumstances of this case.

### Conclusion

The claims which the bankruptcy court disallowed pursuant to § 502(e)(1)(B) meet the requirements of that provision. The claims are for reimbursement or contribution; the claimants are co-liable with EPI to the EPA; and the claims for future response costs are contingent. Furthermore, disallowance of the claims does not contravene the policy objectives of CERCLA. Finally, because the claims fall within the purview of § 502(e)(1)(B), the bankruptcy court is not

---

6. In support of their proposed solution, claimants cite two cases in which the courts have held that where a potential claim for CERCLA response costs is not ripe at the time of the bankruptcy hearing, the claim can be brought within the bankruptcy court's jurisdiction as a contingent claim. *In re National Gypsum Co.*, 139 B.R.

397 (N.D.Tex.1992); *In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir.1991). However, in each of those cases, the EPA itself filed a proof of claim for response costs. Therefore, unlike the present case, the claims in issue were contingent claims of the debtor's creditor that did not meet the requirements of § 502(e)(1)(B).

required to hold an estimation hearing or to establish a trust for payment of future response costs. For these reasons, the decision of the bankruptcy court is hereby AFFIRMED.

IT IS SO ORDERED.