In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.

NORPAK CORPORATION, Claimant,

v.

EAGLE–PICHER INDUSTRIES, INC., et al., Respondents.

Bankruptcy No. 1–91–00100.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Jan. 6, 1995.

## DECISION ON OBJECTION TO CLAIM OF NORPAK

BURTON PERLMAN, Bankruptcy Judge.

A claim was filed by Norpak Corporation ("Norpak") in these consolidated Chapter 11 cases. Debtors have filed an objection to the claim. The matter came on for a pretrial conference at which time the court was informed that the parties were engaged in settlement discussions. Subsequently we were informed via a joint letter from counsel that such efforts had not been productive. That letter indicated that neither party desired an evidentiary hearing, and that the parties desired that the matter be submitted for decision on their respective memoranda. Though claimant has requested oral argument, the court finds that oral argument would not in this matter be helpful.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(B).

The pertinent facts appear from the respective memoranda and are not disputed. They are stated by Norpak in its Response Memorandum as follows:

> On November 30, 1956, Vincent J. Coraci purchased the Debtor's[1] property commonly known as 70–76 Blanchard Street, Newark, New Jersey (hereinafter referred to as the "Premises"). The premises are currently owned by Norpak Corporation (hereinafter referred to as "Norpak") or another related entity wholly owned by Anthony A. Coraci. Although the debtor had ceased operations by the time of the conveyance, Debtor had previously conducted a lead processing operation on the premises, whereby lead was smelted, pulverized, and otherwise processed for use in

---

1. The transfer to Coraci was from the Eagle–Picher Company, identified as an Ohio corporation. The objection is lodged by debtors since Eagle–Picher is the debtor in one of the consolidated cases.

lead-based paint. Because of the nature of the Debtor's operations, and the environmental problems associated with the Debtor's operations which have emerged on adjacent tracts, Norpak believes that it too will eventually encounter environmental problems stemming from the Debtor's earlier activities. (Footnote added.)

We too shall refer to the real property in question as the "Premises."

The proof of claim filed by Norpak in response to the query "Basis for Claim" says simply "Environmental." As to further queries as to "Date Incurred", "Unsecured Amount of Claim", and "Total Amount of Claim" on the proof of claim, the response by claimant is "Unknown at this time."

In their objection to the claim, debtors point out that the claim is filed by a present owner or occupant of property formerly owned or operated by Eagle–Picher. The claim seeks reimbursement for environmental costs that may be incurred by claimant in the future for which it is claimed that Eagle–Picher is wholly or partially responsible. Finally, the claim is contingent in that it asserts a right of contribution for potential future remediation costs that have yet to be incurred. This being the case, debtors say that the present claim is no different from those disallowed by this court in matters involving the Rasmussen Dump Superfund Site and Springfield Township Superfund Site as reported at 144 B.R. 765 (Bankr. S.D.Ohio 1992). There we held that the claims involved must be disallowed pursuant to 11 U.S.C. § 502(e)(1)(B).

Norpak distinguishes the instant case from that involving the Rasmussen and Springfield dump sites by stating that its claim does not arise because of an EPA administrative order or special notice issued under CERCLA. It is claiming, says Norpak, under a state law in New Jersey, the New Jersey Environmental Cleanup Responsibility Act, §§ 13:1K–6, et seq. ("ECRA"). That statute requires that before real property upon which an industrial operation is conducted is sold, or the industrial operation closed, it must be certified to the New Jersey Department of Environmental Protection that environmental cleanup is not necessary, or a cleanup plan

must be submitted. Norpak says that under ECRA law, the owner of real estate is subjected to strict liability for costs without regard to fault. Further, Norpak says that under New Jersey law, a property owner may maintain common law actions for damages against a predecessor in title who actually contaminated the property. It is the position of Norpak that since ECRA and common law claims directly against debtors are the basis for its claim, there is no third party to whom Norpak and debtors are co-liable. In its memorandum, Norpak observes that:

> To date there has been no enforcement activity with respect to claim by federal or state environmental agencies, and there is no indication that such spontaneous intervention is imminent. It is much more likely that Norpak's liability for the contamination caused by the Debtor's lead processing operations on the premises will emerge when Norpak undertakes either to sell the premises or to cease operations.

For these reasons, claimant says that the requirements for disallowance pursuant to § 502(e)(1)(B) have not been met.

Debtors respond by bringing into the equation two other enactments, one under federal law and one in New Jersey. The federal law is the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601 et seq. It was amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). Under CERCLA, a current owner and a former owner of a facility with environmental contamination are jointly and severally liable for environmental cleanup costs. The New Jersey Spill Compensation and Control Act, N.J.Stat.Ann. §§ 58:10–23–11 et seq. (the "Spill Act") is similar in structure to and directly comparable to CERCLA with regard to New Jersey property. As to both CERCLA and the Spill Act, debtors and Norpak, say debtors, are in a co-liability relationship. (A point in sharp conflict between the parties is that Eagle–Picher asserts that in order to pursue a claim against it, Norpak must necessarily invoke either CERCLA or the Spill Act. Norpak to the contrary argues that this is not so, that it

can pursue remedies for damages under the common law. This is a dispute which it is not necessary for us to resolve.) Debtors conclude by stating that a payment of money to Norpak will not extinguish its liability to EPA or the New Jersey authorities for the cost of cleaning up the Norpak site.

As we said in *In re Eagle–Picher Industries, Inc.*, 144 B.R. 765, 768 (Bankr.S.D.Ohio 1992):

> ... a claim should be disallowed under § 502(e)(1)(B) if (1) the claim is for reimbursement or contribution; (2) the claim is asserted by an entity co-liable with the debtor on a primary creditor's claim; and (3) the claim is contingent as of the time of disallowance. *In re Dant & Russell*, 951 F.2d 246, 248 (9th Cir.1991); *In re Charter*, 862 F.2d 1500, 1502 (11th Cir.1989).

We will not repeat the exegesis presented in that decision, but will let it suffice to say that that decision is indeed determinative of the present matter unless Norpak is correct and the remedy that it pursues distinguishes the instant matter from the earlier one. The particular distinction is that Norpak says that its claim is based on ECRA, while the former was based on CERCLA. We conclude that that distinction cannot avail Norpak.

Our analysis begins with the proof of claim which was filed. The proof of claim identifies itself simply as an environmental claim. The theory upon which compensation for the claim rests is not part of the claim. Though Norpak says that it is proceeding under ECRA, that is but an arbitrary choice. It says that there has been no enforcement activity by federal or state environmental agencies, and therefore no likelihood in its view that there will be intervention by such agencies. There has, however, also been no suggestion that Norpak is preparing to sell the premises or close down its operations there. Since we are dealing with contingencies, it must be recognized that the federal Environmental Protection Agency under CERCLA, or its New Jersey counterpart with the Spill Act, may require cleanup, just as it may be that Norpak will have to fund cleanup because of a sale or termination of operations.

If this court were to accede to the argument of Norpak, and were to allow its claim to stand on the theory that this is purely an ECRA claim; that therefore there is no co-liability; that as a result § 502(e)(1)(B) should play no part in determining the allowability of the Norpak claim, there is a very real danger that debtors could find themselves facing double liability for cleanup. Norpak could receive an award here on account of its claim, and not do a cleanup of the premises, or do a cleanup in such a way that federal EPA or the New Jersey authorities did not find satisfactory. Were that to happen, debtors might be faced with further liability for the same act under CERCLA or the Spill Act. It is the possibility of just such double liability that § 502(e)(1)(B) is designed to prevent. *In re Eagle–Picher Industries, Inc.*, 164 B.R. 265, 271 (S.D.Ohio 1994). In sum, then, claimant cannot here avoid the impact of § 502(e)(1)(B) by asserting that it is limiting its theory of recovery to New Jersey's ECRA law, for CERCLA cannot be left out of the picture. It matters not that in the present situation EPA has not taken action to require cleanup; it is sufficient that a claim by EPA exists. *In re Cottonwood Canyon Land Co.*, 146 B.R. 992, 997 (Bankr.D.Colo.1992).

We find therefore that all of the requirements are met to bring the present claim within the sweep of § 502(e)(1)(B), for otherwise the possibility of double liability by debtor for the same act exists. Debtors' objection to the claim of Norpak will be sustained, and the claim of Norpak will be disallowed.